WEST ADAMS, STATE REVENUE AGENT, *v.* LETITIA A. KUY-KENDALL.

1. TAXATION. *Municipalities. Charter exemptions. Classification. Uniformity. Laws* 1884, *p.* 445. *Const.* 1869, *art.* 12, *sec.* 20.

   A provision in a municipal charter granted by the legislature in 1884 exempting from taxation bills and notes given in whole or in part payment for property within the city subject to taxation was void, being indefensible as a legislative classification for taxation and in contravention of the constitutional requirement (Const. 1869, art. 12, sec. 20), that taxation shall be uniform.

2. SAME. *Power of legislature. Const.* 1890, *sec.* 112.

   The legislature is without power to classify property for taxation except as provided in sec. 112, Constitution 1890, which is self-executing and provides that property shall be assessed for taxes under general laws and by uniform rules according to its true value except that a special mode of valuation and assessment is authorized for particular kinds of property therein mentioned.

3. SAME. *Double taxation.*

   An assessment of vendor's lien notes and the real estate for which the notes were given is not double taxation.

4. Same. *Amendment of charters.   Const.* 1890, *sec.* 88.

The Constitution of 1890, sec. 88, authorizing the legislature to
pass general laws under which cities may be chartered, and
providing that all such laws shall be subject to repeal or amend-
ment does not deprive the legislature of the power to control the
taxing power previously delegated to a municipality by a special
charter.   *Yazoo City* v. *Lightcap*, 82 Miss., 148, explained.

5. Same. *Revenue Agent.   Local self-government.   Laws* 1894, *p.* 29.

The Act of 1894 (Laws, p. 29), authorizing the intervention of the
state revenue agent for the assessment and collection of munic-
ipal taxes on property that had escaped taxation is not uncon-
stitutional on the ground that it deprived the city of the right
of local self-government, although the city was operating under
a special charter delegating to it the power of taxation.

6. Same. *Officers.   Failure to levy.   Erroneous belief.   Exemption.*

The erroneous belief of municipal taxing officers that property was
exempt from taxation and its consequent omission from the tax
rolls does not affect the power of the state revenue agent under
the act of 1894 (Laws, p. 29), to proceed to collect back taxes
due thereon, although the municipality be operated under a
special charter authorizing an annual assessment and levy of
taxes by the city.

7. Same. *Void exemption.   Escape from taxation.*

A void provision in the special charter of a municipality whereby
it was attempted to exempt certain property from municipal tax-
ation does not limit the power of the municipal authorities to
assess and collect taxes on the property, and in case of the omis-
sion to exercise this power the state revenue agent is authorized
to treat the property as having escaped taxation by reason of
not being assessed within the meaning of the act of 1894 (Laws,
p. 29), and to proceed under said act for the assessment and
collection of the unpaid taxes thereon.   *Adams* v. *Greenville*, 77
Miss., 881, distinguished.

8. Same. *Special charter.*

The authority of the state revenue agent under the act of 1894
(Laws, p. 29), to proceed for the assessment and collection of
municipal taxes on property that has escaped such taxation is
in nowise limited by the fact that the municipality is operated
under a special charter and not under the code chapter on mu-
nicipalities, his power being the same in both classes of munic-
ipalities.

FROM the circuit court of Warren county.

HON. GEORGE ANDERSON, Judge.

Adams, state revenue agent, appellant, was the plaintiff, and Mrs. Kuykendall, appellee, defendant, in the court below.

The opinion of the majority of the court states the controlling facts of the case.

*McLaurin, Armistead & Brien,* for appellant.

The assessment of taxes is sought to be avoided on two grounds, first, that under the charter of the city of Vicksburg the notes are exempt, and second, that under its charter the city of Vicksburg has no power to levy back taxes.

The asserted exemption is unconstitutional and void for the reason that upon an examination of this charter and the property liable for taxation as set out in sec. 31 thereof, the court will see that all solvent credits are made liable to taxation.

We have here a charter undertaking to assess and tax all solvent credits and at the same time undertaking to exempt that class of solvent credits which represents the purchase money of lands within the city limits. Such an attempted exemption is violative of the provisions of the constitution of 1869, found in art. 12, sec. 20, which is in these words: "Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law."

The corresponding section of the constitution of 1890 is sec. 112, which contains similar language with the omission of the word "all."

It was held in the case of *Daily* v. *Swope,* 47 Miss., 367, that this provision of the constitution of 1869, which we have quoted above, was taken from the constitution of California as a literal transcript, and looking at the decisions of California we find the case of *People* v. *Eddy,* 43 Cal., 331; s. c., 13 Am.

Rep., 143, in which this question is discussed with great clearness, the court says: "Is any argument needed to make it apparent that where the general law subjects all solvent credits to taxation that another law which singles out one class of debts, whether the classification is based on the circumstances that their payment is secured by mortgages or that they are owing to savings banks, or to a particular bank, corporation or person, whether natural or artificial, or a particular class of persons, and exempts such debts from taxation is repugnant to the constitution?" Burroughs on Taxation, sec. 53; *Knowlton* v. *Rock County,* 9 Wis., 410.

The constitutional requirement that taxation shall be equal and uniform is violated by the pretended exemption found in the charter of the city of Vicksburg. Besides, it has been uniformly held as laid down in *Railroad Co.* v. *Adams,* 73 Miss., 648, and in Cooley on Constitution Limitations. (7th ed.), 228, *et seq.,* that the rights and franchises of such a corporation (municipal corporation), being granted for the purpose of government, can never become such vested rights as against the state that they cannot be taken away.

*R. V. Boothe,* for appellee.

Section 31 of the charter of the city of Vicksburg especially provides that notes given for the purchase money of real estate shall be exempt from municipal taxation in all cases, when the property itself is assessed and pays taxes. Laws 1884, p. 445.

Opposing counsel insist that this exemption in the charter is in contravention of sec. 90 of the state constitution, and rely upon the case of *Chidsey* v. *Scranton,* 70 Miss., 449, in support of their contention, but we doubt the applicability of the rule announced in that case to the one now under consideration.

Constitutions, in their interpretation, are governed by the same canons of construction as other laws, and the framers of

our organic law intended to give to sec. 90 a prospective opera-
tion only, except as to those things especially enumerated in
paragraph k, which was the only portion of said section in-
volved in *Chidsey* v. *Scranton, supra.*

Now, what is the language used? "The legislature shall not
pass local, private or special laws in any of the following enum-
erated cases, but such matters shall be provided for only by gen-
eral laws, viz.:

"(k) Exempting any person from jury, road, or other civil
duty (and no person shall be exempt therefrom by force of
any local or private law)."

From the import of the language used it is absolutely cer-
tain that the makers of the constitution, when they framed this
section, intended to mean, and did mean, that it was to have
a prospective operation as to all the matters enumerated, except
those mentioned in subdivision (k), and others of like char-
acter (*ejusdem generis*).

That the framers of the constitution did not intend to give a
retroactive effect to sec. 90, except as indicated, and did not
mean to repeal the charters of existing municipalities, is dem-
onstratably clear from secs. 80 and 88, of the same instrument,
as interpreted by this court. *Lum* v. *Vicksburg,* 72 Miss., 955.

The charter of Vicksburg is not in conflict with the uni-
formity and equality clause of sec. 112 of the constitution,
for sec. 31 of the charter is uniform, and operates alike on all
the inhabitants of the city holding the particular class of se-
curities mentioned, to wit, notes secured by vendor's lien.

But suppose the court should differ from us on this question,
then we come to the second proposition: Can the revenue
agent, under the charter of Vicksburg, have solvent credits as-
sessed for the taxation of back years at all?

Our position on this question cannot be successfully assailed,
for it would seem to follow, as the night the day, that if the
city assessor, himself, is without power or authority to make
such an assessment under the terms of the charter, then,

clearly, the revenue agent cannot force him to do that which he cannot do of his own motion. Argument upon this question would seem to be a work of superogation.

The court will take notice that the city of Vicksburg is operating under its own charter, as provided by § 3035 of the code, and not under the chapter on municipalities.

Now, the code makes ample provision for the assessment by the sheriff of property which has escaped taxation, for the taxes due the state and counties for past years, Code 1892, § 3804. A similar provision will also be found authorizing municipalities to collect back taxes on property which has escaped taxation. Code 1892, § 3018. But the charter of Vicksburg will be searched in vain for any like authority given either to the assessor or any other official, and if the charter does not give the right it does not exist.

Nor can the revenue agent claim the right to levy these taxes under the act approved February 6, 1894, creating the office of revenue agent and prescribing his duties. The very title to this law declares its scope and purpose, and by no possible stretch of the judicial imagination can it be construed to be an amendment to the charter of the city of Vicksburg, and where municipalities are mentioned in the act it must of necessity be held to mean that class of municipalities which are operating under the code chapter, and not to those which, by its very terms, are under their own charters. Besides, if anything further was necessary to answer the argument, the constitution itself answers in sec. 61, which reads as follows: "No law shall be revived or amended by reference to its title only, but the section or sections, as amended or revived, shall be inserted at length."

Greenville, like Vicksburg, is one of the few cities in the state which took advantage of the special provision, code chapter allowing it to do so, and is operating under its separate charter, and this court, in the case of *State Revenue Agent v. Greenville*, 77 Miss., 781, has settled the question for which

we contend, that the revenue agent has no power to assess solvent credits for the municipal taxes for past years at all.

It is claimed that the Greenville case is unlike the one under consideration, in that it was a proceeding by mandamus. So it was. Courts sometimes draw very shadowy distinctions, but none has ever gone so far as to say that the form of action changes the principle of law involved. It was in that case, as in this, one of power simply, and the court say "that such property in a municipal corporation must be clearly given before it can be exercised." This language settles the question at issue. Sections 30, 31, 33 and 35 of the charter of Vicksburg, the only ones bearing on the question.

The exemption of this class of securities from taxation is consonant with the plainest principles of equity and justice, for when a piece of real estate itself is taxed, and the notes given for the purchase money of it are also taxed, it is tantamount to double taxation.

The preponderance of authority is against us, but those courts holding to the view herein expressed are supported by the soundest reasoning.

*Catchings & Catchings,* on same side.

This is a suit wherein the revenue agent, acting under the acts of 1894, has directed the assessor of the city of Vicksburg to make an assessment by way of an additional assessment (under general levy) on the roll or list in his hands for property that had escaped taxation, and serving the notice provided in this chapter, whereby objections to the additional assessment may be heard at the next meeting of the board of mayor and aldermen of the municipality. This was done in this case, and it is claimed that under the acts of 1894, ch. 34, empowering the revenue agent to require the assessor to make additional assessments, that it was within the power of the legislature to confer upon the revenue agent the power to make this ad-

ditional assessment regardless of the charter. We say that power can only be exercised by the state, and such governmental divisions to which it may delegate the power. It may delegate the taxing power for certain purposes to counties and municipalities. Such taxing power as they have being purely delegated, must be strictly construed. Unlike the state, which is sovereign, they have no implied or inherent power to levy taxes, and as the state is presumed to have clearly expressed the extent to which it meant to delegate this power, no implication will be indulged in by which it can be enlarged.

The counties of the state have the power, under §§ 3768, 3769, Code 1892, to assess persons and property that have escaped taxation in previous years.

Prior to the enactment of those provisions, or their prototypes, under the rule of construction stated by us, counties had no authority to assess persons or property that might have escaped taxation in previous years. *Parkinson* v. *Jasper County Telephone Co.*, 67 N. E. (Ind.), 474; *State* v. *Howard*, 80 Ind., 466; *Stockmar* v. *Robins*, 80 Ind., 195; *Scott* v. *Knightson*, 84 Ind., 108; *Hamilton* v. *Amsten*, 88 Ind., 304; *Lang* v. *Clapp.*, 103 Ind., 17.

All municipalities coming within the municipal chapter of the code, by virtue of the express authority conferred in sec. 3018, have the power to assess persons and property that have escaped taxation in previous years. For the reasons already stated, in the absence of such expressed grant of power, municipalities coming within the provisions of that chapter would be powerless to tax persons or property that had escaped taxation in previous years. The city of Vicksburg is not one of the municipalities covered by the code chapter, but is operating under its own individual charter. Its charter does not confer upon it the power to assess and tax persons or property that have escaped for previous years, and it therefore has no such power.

Section 3035 of the code chapter expressly exempts from it all municipalities existing at that time which elected not to come under its provisions, and this court, in the case of *Lum* v. *Vicksburg,* 72 Miss., has declared that the city of Vicksburg has taken the necessary steps to exempt it from the operation of the code chapter.

The act of February 7, 1894, providing for a state revenue agent, does not by its terms confer such power upon the city of Vicksburg. If the city should attempt of its own volition to assess and tax escaped property, it could not point to anything either in its charter or in the act of 1894, which conferred upon it the power to do so. If the act of 1894 is applicable to the city of Vicksburg at all, which we deny, it only confers power upon the city to assess and tax property that may have escaped when it has been discovered by the state revenue agent, and when he has given notice to the tax collector and demanded of him that he cause the same to be assessed. In other words, if that act is applicable to the city of Vicksburg, its power to assess and tax escaped property depends entirely upon the pleasure of the state revenue agent. The city authorities might be perfectly aware that property has escaped taxation, and yet would have no authority to cause it to be assessed and taxed unless the state revenue agent should give notice to them that it had escaped, and demanded of them that it be assessed and taxed. It could never have been the intention of the legislature that the city of Vicksburg should be put in such position. If it had intended to confer upon the city the power to assess and tax property which had escaped it would have conferred it directly, as it has done in the case of counties, and in the case of those municipalities which come within the provisions of the code chapter.

It is evident that the purpose of the state revenue agent law was to create an officer who should act in co-operation with counties and municipalities which already possessed the power to assess escaped property, and that it was not the intention

of that law to confer upon the state revenue agent any authority with regard to the assessment and taxation of escaped property which counties and municipalities might not of themselves exercise.

If such a construction could be placed upon the act of 1894, we respectfully submit that so far as the city of Vicksburg is concerned it would clearly be unconstitutional. The state undoubtedly has very large control over municipalities. It may create them or not, as it pleases, and it may confer upon them, when created, such powers as it chooses. But when it has created a municipality the powers conferred upon it must, under our government, be exercised by the authorities or officials of the city. *People* v. *Humburt,* 24 Mich., 44; *Rathbone* v. *Wirth,* 6 App. Div., 277; 40 N. Y. Sup., 535; *Rathbone* v. *Wirth,* 150 N. Y., 450; *State* v. *Denny,* 118 Ind., 382; *State* v. *Moores,* 76 N. W.; *People* v. *Lynch,* 21 Am. Rep., 688; *People* v. *Detroit,* 29 Mich., 108; *People* v. *Detroit,* 29 Mich., 343; *People* v. *Township Board,* 25 Mich., 153; *Attorney General* v. *Detroit,* 58 Mich., 213; *Attorney General* v. *Trombly,* 89 Mich., 744, 66 Pac. Rep., 1061.

Argued orally by *A. A. Armstead,* for appellant, and by *T. C. Catchings,* for appellee.

TRULY, J., delivered the opinion of the court.

The state revenue agent gave notice to the assessor of the city of Vicksburg that certain property, to wit, solvent credits to the amount of $12,000, belonging to Mrs. L. A. Kuykendall, had escaped municipal taxation for the years 1890 and 1891. The assessor placed said property on the roll, and notified Mrs. Kuykendall as required by law. Mrs. Kuykendall duly appeared before the board of mayor and aldermen and filed her petition, asking that said assessment be stricken from the roll, averring that said property was not liable to taxation for reasons set out in her petition. The petition was granted, and said assessment was ordered to be stricken from the roll. The

revenue agent appealed to the circuit court, which affirmed the judgment of the board of mayor and aldermen of the city of Vicksburg, and the revenue agent has appealed to this court.

The agreed statement of facts on which the case was tried in the court below is as follows: "That appellee was the owner of the solvent credits, of the value of $12,000, which had not been assessed for city taxes for the years 1890 and 1891; that the revenue agent notified the city assessor to levy an assessment against appellee for said solvent credits for the years 1890 and 1891, and that all legal formalites were duly complied with in making said assessment; that Mrs. L. A. Kuykendall appeared in obedience to notice, and presented her petition asking that said assessment be stricken off; that the notes constituting said solvent credits were vendor's lien notes, and represented the purchase price of a certain lot of land situated in the city of Vicksburg; that all taxes due on said land had been paid, but no taxes for said years had been paid on said notes; and that the city of Vicksburg was governed by its own charter, and was not under the code chapter on Municipalities."

The appellee bases her claim of exemption on two grounds, which we will consider in the order in which they are presented:

1. It is contended that as the solvent credits here sought to be subjected to taxation are vendor's lien notes, and represent the purchase price of property within the corporate limits of the city of Vicksburg which is subject to taxation, and on which the taxes were duly paid, the notes are themselves not taxable, being expressly exempted by the terms of sec. 31 of the charter of Vicksburg (Acts 1884, p. 445, ch. 391). That section is in the following words: "Section 31. Be it further enacted, that all property and estate, real, personal and mixed, in said city, such as lots and parts of lots, with buildings and improvements, watches and jewelry, gold and silver plate, goods, wares and merchandise, horses, mules, carriages, carts,

drays, and other vehicles, stocks or bonds not exempt by law, money on hand or deposit, or at interest, all debts due to any corporation, firm or person in said city from persons, corporations or firms within or without the same, all interests in corporations, companies or copartnerships, shares in national banks beyond the proportionate value of the capital stock in United States bonds, all interests in steamboats and other water crafts, in railway cars and other movable property, and all kinds, qualities and descriptions of property not above mentioned, within the city of Vicksburg, shall be assessed and listed for taxation at the fair and full worth and market value of the same; provided, however, that the following property and none other shall be exempt from taxation: The property of the United States, of this state, of Warren county, of said city, of public schools, of seminaries of learning, of churches, and of religious, benevolent, literary and scientific associations, and all bills or notes given in whole or in part payment for property within said city subject to taxation." And certain other property exempted by express statute is also exempted.

The argument in support of the first contention is that, as this charter of Vicksburg antedates our state constitution of 1890, it is not affected thereby, and the exemption granted by the charter, never having been expressly repealed, still exists; and the case of *Lum* v. *City of Vicksburg,* 72 Miss., 955, 18 So. Rep., 476, is cited as an authority for that position.

It will be noted that the section of the charter under consideration provides that "all debts due to any person in said city from persons within or without the same," and "all kinds, qualities and descriptions of property not above mentioned, . . . . shall be assessed and listed for taxation at the fair and full worth and market value of the same." After thus providing for the assessment of all property, including all solvent credits, for purposes of taxation, the charter then proceeds to exempt from taxation a certain designated portion of the general class of solvent credits.

This charter provision was enacted in 1884, and must be first considered in the light of the constitutional provisions then in force, and the judicial interpretation thereof. Article 12, sec. 20, of the constitution of 1869, provides: "Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law." Was the clause of the charter now under consideration a violation of that section of the constitution?

It must be conceded as definitely settled in this state that the rule of uniformity and equality in the constitution of 1869 applied to and governed general municipal taxation. Without extending this opinion on this point by quotation, we cite *Daily v. Swope,* 47 Miss., 386; *Vasser v. George,* 47 Miss., 721; *Adams v. Bank,* 75 Miss., 701, 23 South., 395, as the more explicit utterances of our court upon this question. It is also familiar learning that, under the constitution of 1869, it was uniformly held that the subjects of taxation might be classified at the discretion of the legislature. A reference to the following authorities will show the gradual evolution of that doctrine: *Daily v. Swope, supra; Vasser v. George, supra; Mississippi Mills v. Cook,* 56 Miss., 40; *Bank v. Worrell,* 67 Miss., 47, and later cases. But it must also be noted that each of these cases held further that there could be no discrimination between property of the same class. The classification of property for purposes of taxation, when upheld as not violative of the constitutional provision, is always coupled with the proviso, "if all of the same class are taxed alike." We are not now considering a state of case where no power to tax has been delegated to the municipality. It may be taken as an established doctrine that municipalities derive their power of levying taxes for general purposes only through a delegation from the state. The sovereign power of taxation is vested solely in the state. But the question of what, if any, inherent powers a municipality possesses, is not presented by this phase of the case. Here we have an absolute and complete delegation of

the sovereign power of taxation for municipal purposes upon every species of property, and, after the general grant is made, a limitation placed thereon. Is the attempt to relieve vendor's lien notes from the operation of a general law a classification of property for purposes of taxation, which will be upheld as a legitimate exercise of legislative discretion, or is it an effort to grant an exemption from taxation, which contravenes the "uniformity and equality" clause of the constitution? Under the constitution of 1869 it was held to be a legitimate exercise of legislative power to classify property for purposes of taxation, but, in order to receive judicial sanction, it was necessary that the attempted classification should possess certain legal requirements. The legislature was without authority to arbitrarily grant exemptions under the guise of classification. Even the classification was required to operate fairly, equally, and uniformly upon all property of the same description. The tax must benefit all alike. It must apply impartially to all constituents of each class, and all must bear a like burden from the tax imposed. If the evident intent and natural and legitimate result of the law are to equalize the burden of taxation, it should be upheld; but when taxes are imposed upon false and unjust principles, and the law operates to cause gross inequality and discrimination among the classes of property selected for taxation, it will be obnoxious to the fundamental principle of equality upon which our constitutional scheme of taxation is founded.

This position is approved and sustained by many authorities in other states, and is stated as the true rule in 25 Am. & Eng. Enc. of Law, 55, et seq. In *Knowlton* v. *Supervisors,* etc., 9 Wis., 410, where the question now under consideration was most exhaustively discussed, it was decided that the legislature had no power to arbitrarily classify property for purposes of taxation within the limits of the city of Janesville. The reasoning of this case is carefully analyzed and approved by Cooley's Constitutional Limitations (7th ed., ch. 14), and

on page 742 the rule is thus concisely stated: "The power to determine the persons and objects to be taxed is trusted exclusively to the legislative department, but over all these objects the burden must be spread, or it will be unequal and unlawful as to such as are selected to make the payment." The case of *Weeks* v. *Milwaukee,* 10 Wis., 242, was one where several lots in the city, upon which a costly hotel was being erected, had been purposely omitted from the tax roll, under the directions of the common council, "in view of the great public benefit which the construction would be to the city," but the exemption was held invalid. In *People's Loan & Homestead Association* v. *Keith,* 153 Ill., 609, 39 N. E., 1072, 28 L. R. A., 65, the supreme court held that an act exempting from taxation the notes and mortgages due building and loan associations was unconstitutional. As applicable in principle to this case we quote from that opinion: "It is also claimed in the argument, if the corporation is taxed on the obligations it holds against borrowers, the borrowing stockholder will be taxed twice on the same property—once on the real estate mortgaged, and again on the credit arising from the loan—and the result is double taxation. We do not concur in this view. Where a person owning a farm procures a loan and mortgages the land, the land is subject to taxation as the property of the owner, and the note and mortgage are subject to taxation as a credit in the hands of the person loaning the money, and, where a loan is procured from a homestead loan association, the borrower and the association occupy a similar position; and if the note and mortgage, and the land upon which the mortgage is given, are both taxable in the one case, we see no good reason why they should not be in the other." In *Police Jury* v. *Nouges,* 11 La. Ann., 740, a tax on dairymen or on cows in a certain portion of a taxing district was held to be void, as being repugnant to the equality clause of the constitution of that state. See, also, *Charlotte B. & L. Ass'n* v. *Commissioners,* 115 N. C., 410, 20 S. E., 526; *Britton* v. *Bank,* 105 U. S., 322, 26 L. Ed., 1053; *San*

*Mateo Co.* v. *So. Pac. R. Co.* (C. C.), 13 Fed., 722; *Cox* v. *Truitt,* 57 N. J. Law, 635, 31 Atl., 168; *Wells* v. *Com'rs of Hyaltsville,* 77 Md., 125, 26 Atl., 357, 20 L. R. A., 89. In *Shotwell* v. *Dalrymple,* 49 N. J. Law, 531, 10 Atl., 386 (a case involving practically the same question here presented), the supreme court of New Jersey declared an act subjecting certain mortgages to taxation, and exempting others, to be invalid, and not a proper exercise of the admitted legislative power to classify property for purposes of taxation. Says the court: "It may be regarded as settled that a tax law, to be general, or a rule, to be uniform, must each include in its operation all property of a class. *State Board of Assessors* v. *Central R. Co.,* 48 N. J. Law, 146 (4 Atl., 578). The question of difficulty is in respect to what property, having in view the object of the legislation, namely, taxation, is included within the class. In the settlement of this question previous adjudications are of little value, unless resting upon like conditions of fact. All the cases recognize the principle that property can be segregated into classes only by reason of differences in it which afford a ground for different treatment in reference to taxation. The only rule which can be regarded as settled, in reference to such differences, by the case just mentioned, is that difference in the use of property, as well as inherent differences in the kind of property, may be the basis of classification." In *Hamilton* v. *Wilson,* 59 Pac., 1069, 48 L. R. A., 238, the supreme court of Kansas held unconstitutional an act whereby certain personal judgments were subjected to taxation, while judgments obtained upon foreclosure of mortgages were exempted.

Passing now on to an examination of the decisions of our own court on this question, we find that in *Smith* v. *City of Aberdeen,* 25 Miss., 462, Yerger, J., states the rule thus: "It is perfectly competent to designate and specify the particular class or kind of property on which the tax shall be levied; and, when this is done, so long as it exempts no property falling within that designation from the operation of the tax, no valid objection can be urged

against it." In *Mississippi Mills* v. *Cook, supra,* this is stated as being the unanimous conclusion of the court on this point: "The requirement of uniformity means that all property belonging to the same class shall be taxed alike, so that all horses shall be taxed at the same rate, and all lands or stocks or merchandise." This quotation is sufficient to show the controlling idea in the mind of the court. If one stock of merchandise, one tract of land, one horse, one solvent credit, was taxed, all belonging to the same class should be taxed alike. Assess all of a class, or none, was evidently the meaning the court intended to convey.

Section 31 of the charter of the city of Vicksburg directs that all debts due any person, including in this general term all notes, mortgages, trust deeds—in short, all solvent credits, secured or unsecured—"shall be assessed and listed for taxation at the fair and full worth and market value of the same," and then exempts notes representing purchase price of property from taxation. This is not a "classification of property," according to our understanding of the meaning of the term. Vendor's lien notes are simply solvent credits, belonging to the same class, possessing similar characteristics, and differing neither in kind nor use. To our mind it is manifest that the constitutional rule of uniformity has been ignored in the discrimination made between different kinds of solvent credits mentioned in the charter. Take a common occurrence as an illustration: A man purchases a lot with the intention of building a house. A portion of the purchase price is represented by vendor's lien notes, and, to secure money to erect a house he executes a junior mortgage. Upon no principle of equity, justice, or right can the former solvent credit be exempted while the latter is taxed. From the evidence of the debts themselves, from the manner in which, by operation of law, they are secured and their payments insured, vendor's lien notes are among the safest, and consequently most valuable, of the great class of solvent credits, and yet the holder of this kind is alone singled out to be the re-

cipient of legislative favor. There is no sound reason why bills and notes given for purchase of property, and carrying with then a lien to enforce the payment, should be exempted from taxes, while other promissory notes and solvent credits of every kind and description, secured and unsecured, are subjected. To allow a tax law to select certain articles of property, and, taking them from the general class to which they belong, exempt them from the uniform operation of the law, would be to permit discrimination of the most invidious character. Such favoritism could make no pretense of equality. It would lack the semblance of legitimate tax legislation. Cooley on Taxation (2d ed.), p. 215. It was no more in the province of the legislature to assess solvent credits, except purchase money notes, than it would be to assess all houses except those used as banks, or all lots except those on which hotels are built, or all stocks of goods except liquors or dry goods or groceries, or to make any other capricious subdivision of any one of the numerous classes of taxable property. It should be observed that this exception is not based upon or supported by the reasoning which has occasionally induced legislatures of a few states to exempt from taxation horses of a specified breed, cows used solely for dairy purposes, lands devoted exclusively to the cultivation of a special crop, like sugar beet or ramie, and other similar exemptions. These are founded upon grounds of public policy on the theory that they tend to encourage and develop favored "infant industries," which, it is thought, will conduce to the benefit of the state as a whole. As to the wisdom of such exemptions and so-called "classifications" the courts have no right to speak, and their validity depends on the wording of the constitutions of the states in which they are created; but the reasoning which prompts them has no application to the case at bar, and even in these instances all of each "class" is treated alike.

We conclude that the exemption from taxation of purchase money notes attempted to be granted by section 31 of the charter of Vicksburg cannot be upheld as a legislative classification

of property for purposes of taxation, but that it is void, as being in contravention of art. 12, sec. 20, constitution 1869. As this obviates the necessity of any extended reply to the arguments as to the application of certain sections of the constitution of 1890, we content ourselves with stating that the question under our present constitution is free from difficulty, as the self-executing mandate of sec. 112 of that instrument does not permit the legislature to classify property for taxation except as therein expressly stated. *I. C. R. Co.* v. *Ihlenberg,* 75 Fed., 873, 21 C. C. A., 546, 34 L. R. A., 393; *Adams* v. *Bank of Oxford,* 78 Miss., 532, 29 So., 402.

As an answer to the proposition that the exemption here claimed should be upheld because the assessment of vendor's lien notes is double taxation we refer to the opinion of this court—unanimous on that point—in *Adams* v. *Clarke,* 80 Miss., 134, 31 So., 216.

2. The second ground on which appellee bases her claim to exemption is that the city authorities have no power, under the charter or state law, to assess property for taxatin for the taxes of past years; and in support of this position it is contended that as the charter of the city of Vicksburg is silent upon the point, and does not expressly grant to its taxing officer the power to assess property for taxation for past years, the state cannot rightfully grant the power to the state revenue agent of requiring the municipal assessor to make the assessment. And it is urged further that if chapter 34, p. 29, Acts 1894, was so intended, it is null and void, as being an invasion of the right of local self-government which is vested in municipal corporations under the constitution of 1890; and, again, it is urged that if the act of 1894 was designed to operate as an amendment to the charter of municipalities which, like the city of Vicksburg, are governed under special charters, and not the code chapter on "Municipalities," in that view of the act it is violative of sec. 88 of the constitution of 1890, because under that section the legislature is deprived of the

power to amend charters of existing municipalities; and the case of *Yazoo City* v. *Lightcap,* 82 Miss., 148, 33 So., 949, is cited as authority.

The contention that the constitution of 1890 in any manner abridged or limited the power of the legislature in reference to municipal corporations is based upon a total misconception of the real meaning and design of that instrument. Munnicipal corporations are now, as they have always been in this state, purely creatures of legislative will; governed, and the extent of their powers limited, by express grants; invested, for purposes of public convenience, with certain expressed delegations of governmental power; their granted powers subject at all times to be enlarged or diminished; having no vested rights in their charters which are subject at all times to amendment, modification, or repeal; their powers, their rights, their corporate existence, dependent entirely upon legislative discretion, acting as it may deem best for the public good. This conclusion has been so repeatedly announced by our own courts, and has been so uniformly approved by text-writers, and decided by courts of last resort in other states, that it has become crystallized into settled law, and now receives recognition as a universally accepted rule of constitutional construction. Unless expressly limited by constitutional provision, the legislative department has absolute power over municipalities. The constitution of 1890 contains no such specific limitation upon the power of the legislature in this regard. On the contrary, a careful consideration and comparison of the various sections in that instrument setting forth the constitutional scheme regarding municipal corporations will demonstrate that sec. 88 was one of the mandates of the legislature, not permitting (for it had always been vested with ample power) but requiring it to exercise that power so as to correct certain evils previously existing in the government of certain municipalities. Prior to the adoption of the constitution of 1890 every city and town in the state was governed under its own special charter, framed

according to the wishes of its citizens to suit local conditions, invested with various powers, with different schemes of taxation, operating under diverse theories of government. Under this system abuses had crept into many of the municipal governments; in some, the power of taxation was abused; in some, municipal franchises were sacrificed; in others, the faith of the city or town had been pledged, and the taxpayers were burdened by grants to various enterprises; in still others, as in the instant case, special favor was capriciously shown to some arbitrarily selected species of property. The framers of the constitution did not desire, in the language of the opinion in *Lum v. Vicksburg, supra,* to direct any "compulsory legislative repeal" of existing charters, which, as supreme lawmakers, they were fully empowered to do, but chose, rather, to leave the charters undisturbed, where the machinery of local government was running smoothly and without friction, recognizing the wisdom of submitting to local agencies the framing of such provisions as would best conserve their varied local interests, as is clearly and forcibly expressed in the opinion of the chief justice in the Lightcap case; and yet, realizing the necessity for some general plan of easy operation, under which municipalities might be chartered, or their charters amended, without appeal to the legislature for an additional grant whenever varying local conditions should require such amendment, they enacted sec. 88 as a command to the lawmakers to devise such a plan. The Lightcap case is simply authority for the position that as the legislature has, in the code chapter on "Municipalities," complied in part with the mandate of sec. 88, the charter of each particular municipality can only be specially amended in the method pointed out by that chapter; but the opinion in that case does not decide that the legislature cannot, at its discretion, enact general laws amending, modifying, or repealing the chapter on "Municipalities," or enlarging or diminishing the powers granted by the special charters of other municipalities not operating under said chapter. So far from forbidding the

legislature to interfere with the charters of existing municipalities, the constitution, by sec. 80, specially provides that the legislature shall enact general laws to prevent the abuse of all municipal corporations of their power of assessment, taxation, borrowing money, and contracting debts; necessarily referring to existing charters, as municipalities have no power in respect to the subjects named, except as expressly granted. From these sections, and also from the language of sec. 90 h, sec, 139 and sec. 183, we are driven unavoidably to the conclusion that, conscious of existing evils, the great statesmen who framed the constitution, in this regard, were not content longer to risk the rights of the citizens of the many municipalities to .the discretion of the legislature, but designed, by the sections referred to, to peremptorily direct the exercise of the protective power vested in the legislative department of the state.

The unwriten theory of local self-government cannot be read into a constitution to vary the ordinary and usual meaning of the terms employed, when otherwise the construction of the instrument is free from doubt. Certainly the theory can have no application where, as in this case, the power is reserved to recall even the right to elect their own local officers. And it is an invariable rule, supported by a wealth of authority, that it is never a violation of the doctrine of local self-government for the state to appoint its own fiscal agent to supervise the action of county or municipal taxing officers. And, indeed, it has been held in many well-reasoned cases that citizens of a municipality are not guaranteed the right of local self-government, and that their right to participate in the choice of officers who are to administer the affairs of the local government is a matter exclusively within the judgment and discretin of the legislative department of the state government. *Newport* v. *Horton* (R. I.), 47 Atl., 312, 50 L. R. A., 330; *Americus* v. *Perry* (Ga.), 40 S. E., 1004, 57 L. R. A., 230; *Davock* v. *Moore,* 105 Mich., 120, 63 N. W., 424, 28 L. R. A., 783; *State ex rel.* v. *Myers,* 52 Wis., 628, 9 N. W., 777. How

absolutely barren of merit is the claim of municipalities in this state to the right of local self-government in regard to the matter now being considered, will be made apparent and settled beyond cavil or doubt when sec. 139 of the constitution is recalled, whereby the legislature is expressly empowered to withdraw from the citizens of all municipalities even the power of choosing their own local officers. We adhere to the time-honored and firmly established doctrine that all municipalities are within legislative control, and that sec. 88 placed no limitation on that power. We further hold that as the sovereign taxing power is vested solely in the state, and its relinquishment never to be inferred, the legislature acted within the scope of its unquestioned powers when it created the office of revenue agent, and had the right to clothe him with absolute power and control over the fiscal affairs of the state, so long as in so doing no provision of the constitution was violated, and that ch. 34, p. 29, Acts 1894, did not contravene any constitutional provision, and does not deprive the citizens of any municipality of any vested or inherent right of local self-government. It is stated by Mr. Cooley as being the general rule, deduced by him after an investigation of all the authorities, that the legislature has undoubted power to compel municipal bodies to perform their functions as local governments under their charters, and require them to exercise the power of taxation whenever it may be deemed necessary or expedient. Cooley's Const. Lim. (7th ed.), p. 335. The legislature has plenary power to deal with the entire subject of taxation. Its power is supreme in devising the machinery for assessing the taxable property, imposing taxes thereon, and collecting and disbursing the same. So announced in the recent case of *State of Wisconsin* v. *Thorne, County Clerk,* 112 Wis., 81, 87 N. W., 797, 55 L. R. A., 956. And in that case, and many other modern cases, the power of the legislature to devise special machinery, intended primarily for the purpose of levying taxes, has been upheld. *Wisconsin ex rel.* v. *Pors, Clerk,* 107 Wis., 420, 83 N. W., 706,

51 L. R. A., 917; *Sturges v. Carter, Treas.,* 114 U. S., 511, 5 Sup. Ct., 1014, 29 L. Ed., 240; *Nashville Street R. R. Co. v. Morrow,* 87 Tenn., 406, 11 S. W., 348, 2 L. R. A., 853; *Flanders* v. *Town of Merimack,* 48 Wis., 572, 4 N. W., 741. See, also, as showing the paramount control of the legislature over municipal and local taxation, *Meriwether, Receiver, etc., v. Garrett et al.,* 102 U. S., 472, 26 L. Ed., 197, generally known as the "Memphis taxing district case."

It is urged, however, that even if ch. 34, p. 29, Acts 1894, be upheld, it cannot be made to apply to the city of Vicksburg and other municipalities operating under special charters. And as to the city of Vicksburg, it is said that, as its charter only provides for a levying of taxes for the current year, after such annual assessment is made and approved by the board of mayor and aldermen, their action is final, and cannot be revised or corrected. If we follow the logic of the argument it leads inescapably to the conclusion that the municipal taxing officers are clothed with absolute power over the subject of taxation, and that the selection of the subjects of taxation and the classes of property to be favored or discriminated against, depends solely upon the personal whims or wishes of the men composing the board then in power. If their authority be above question, and their errors beyond correction, each succeeding board could, at its pleasure, levy taxes only on such classes of property as they selected to bear the entire burden of local government. Thus, if the board should chance to be composed of the advocates of the single tax theory, land would alone be subjected to taxation, and all other classes of taxable property exempted by the simple process of omitting them from the roll. This would be devoid even of the semblance of uniform and equal taxation. See *Wells* v. *Hyattsville, supra.*

The fact that certain property escaped taxation in past years, either through the neglect, oversight, or misapprehension of law, of the taxing officer, or through mistake or intention of the owner, does not deprive the state of its right to still sub-

ject the property to its just proportion of the legal burden which all property must bear, and the law establishing a method to insure the collection of such delinquent taxes simply grants a power to enforce an existing right. *Vicksburg, S. & Pa. R. Co.* v. *Dennis,* 116 U. S., 665, 6 Sup. Ct., 625, 29 L. Ed., 770; *Lee* v. *Sturgess,* 46 Ohio St., 153, 19 N. E., 560, 2 L. R. A., 556; *Ice Co.* v. *Adams,* 75 Miss., 410, 22 So., 944.

The further contention of counsel for appellee is this: That as the taxing officers of the city of Vicksburg were without authority to levy taxes on solvent credits evidenced by purchase money notes at the date when, in the instant case, the property is said to have escaped taxation, i. e., the years 1890 and 1891, therefore the revenue agent is not empowered now to require such assessment. There are two plain answers to this position: First. The attempted exemption being void, the city authorities were empowered to make the levy, and the property was simply omitted through a misapprehension of the law by the taxing officers, and that does not bind the state, as was expressly decided in *Ice Co.* v. *Adams, supra.* Second. Another and all-sufficient answer is found in the reasoning of the court in *Railroad Co.* v. *Adams,* 73 Miss., on pages 660, 661, 19 So., 91, which is so forceful and unanswerable, and applies so perfectly to the case at bar, that we adopt it as decisive of this point. In this regard the same rules of law are applicable to the railroad commission and to the city of Vicksburg. Each is vested with governmental functions purely for public convenience. Each holds its powers in this connection at the legislative pleasure. Neither can assess property for taxation except by grant from the lawmaking power. The evident intention of the legislature was that all property, corporate or individual, which from any cause had escaped assessment since the year 1886, should be subjected to taxation. To hold that ch. 34, p. 29, Acts 1894, was inoperative because of the lack of power in the railroad commission and municipal tax officer to comply with the mandate of the law, would be to convict the legisla-

ture of doing an idle thing. ˙ A legislative command to a subordinate officer to perform a certain duty pertaining to the fiscal affairs of the state necessarily carries with it the power to obey the law. It would not be giving ch. 34 its full legal effect and scope to limit its operation to municipalities which had voluntarily adopted the code chapter on "Municipalities." This would have the effect of dividing municipalities into classes on account alone of the differences in their respective charters, while the plain language of sec. 80 of the constitution requires that abuses of the power of taxation and assessment shall be prevented by general laws applicable to all municipalities.

We hold that ch. 34, p. 29, Acts 1894, is a general law, embracing in its scope all municipal corporations of the state. This is decisive of the legal principles involved in appellee's claim of exemption, and this opinion might well end here. But it is so strenuously urged that the propositions of law relied on by appellee have already been approved by this court in the case of *Adams* v. *Greenville,* 77 Miss., 881; s. c., 27 So., 990, that we will devote a few words to the differentiation of that case from the one at bar: The facts in the Greenville case were these: In 1894 and 1895 the general municipal levy was 12 and 11½ mills on the dollar, respectively, but on banks and solvent credits the levy for the same years was only six mills. In 1899 the revenue agent petitioned for a writ of mandamus to require the board of mayor and aldermen of the city of Greenville to levy 6 and 5¼ mills on banks and solvent credits, basing his petition on the claim that this property had escaped taxation to that extent. The writ was denied by the circuit court, and on appeal by his court. Assuming as correct all that can be deduced from that opinion, it cannot be made to apply to the instant case. That was a mandamus case, and a majority of the court held that the revenue agent was not entitled to that remedy; and this, really, was the point of decision in that case. But a brief analysis will demonstrate that the decision in the Green-

ville case can be sustained by the terms of ch. 34, p. 29, Acts 1894, and still not conflict with the conclusions arrived at in the case at bar. The act under consideration, so far as germane to this question, empowers the revenue agent to sue (sec. 2) "for all past due and unpaid taxes" whenever the state or county or municipality could sue, and (sec. 3) to order proper assessment when any property "has escaped taxation by reason of not being assessed." The facts of the Greenville case did not place it in either category. It did not belong to the first. No taxes were past due, for, in order to make taxes delinquent, they must first be levied, and the property owner given an opportunity to pay. Again, certainly the city had no right to sue for taxes which it had neither levied nor demanded, and, under that section of the act, the right of the revenue agent to sue is dependent upon the right of the state, county, or municipality. Nor did the Greenville case fall within the purview of sec. 3 of said act, for two reasons: First, the revenue agent did not follow the statutory method of procedure therein pointed out; and, second, the property sought to be taxed "had not escaped taxation by reason of not being assessed." In truth, the property had been assessed, and the taxes levied thereon had been duly paid, and no tax was past due or unpaid. How vitally different is the case at bar. Here is a state of case where property has "escaped taxation by reason of not being assessed"—a case accurately and fully described by the very terms of the statute.

Our conclusions, then, are: First, the exemption attempted to be granted by sec. 31 of the charter of the city of Vicksburg is void, being in violation of sec. 12, art. 20, of the constitution of 1869; second, ch. 34, p. 29, Acts 1894, applies to all municipal corporations in the state; third, the revenue agent is authorized to have all property assessed which has heretofore escaped taxation by reason of failure to assess, and this applies to municipal taxes as well as state and county. These conclusions in no way impair or infringe upon the paramount power

over local taxation which is vested in the municipal authorities. They have the sole and exclusive right of deciding upon the necessity or advisability of levying taxes for local purposes, and of fixing the rate to be imposed. Within their charter limit they may collect much or none, as their judgment dictates or municipal needs require. But when *ad valorem* taxes are levied the same rate must be imposed upon all property liable. This rule cannot be evaded. One class of property cannot be favored by the imposition of a lower rate, or another class exempted entirely by omitting it from the tax roll. A strict adherence to this method can alone prevent unfairness and insure equality and uniformity.

Just a final word: The primary purpose of the law creating the office of revenue agent, and providing a summary method to enforce the payment of any sum due the state, or any levee board, county, or municipal corporation, for delinquent taxes, or by any officer or agent thereof, and formulating a plan insuring the assessment of all property which has escaped taxation, was for the protection of the public revenue, first, by forcing the corrupt or negligent officer to promptly account for or pay over the public funds intrusted to his charge; second, by preventing fraudulent escape from taxation by failing to list property for assessment. But the terms of the law were advisedly and designedly made so broad as to cover every case where property has escaped taxation—whether fraudulently withheld by the corrupt taxpayer, overlooked by the negligent assessor or tax collector, accidentally omitted by the honest citizen, or intentionally omitted through misapprehension as to its liability to taxation. Whatever the reason or cause of the failure to assess, the law requires that every class of property, corporate or individual, not expressly exempted shall yield its fair proportion of taxes, so that the burden of government shall rest uniformly upon all. The inflexible but impartial enforcement of this law is to be commended, as no injustice can be worked under its terms. No matter how defect-

ive or erroneous the assessment or levy may prove, the taxpayer who fairly lists his property for taxation, and once pays the tax imposed, is within the protection of the law. Every good citizen should be willing to pay the taxes rightfully due on his property. No citizen is required to do more. None should be permitted to do less.

*Reversed and remanded.*

CALHOON, J., delivered the following dissenting opinion:

I cannot concur in the opinion of the majority of the court. Municipalities are powerless to levy taxes, unless expressly authorized to do so by law. Vicksburg could not levy any tax whatever if its charter did not empower it to do so. It is also perfectly clear that, until the municipal chapter of the Code 1892 (ch. 93, p. 686) was enacted, no municipality could tax property which had escaped taxation in previous years. But Vicksburg is not under the municipal chapter of that code. It elected not to come under it, and therefore by § 3035 it is exempted from its operation as to the subject in hand, it not being one of those made applicable by § 3036 to all such corporations whether under that chapter or not. Taxation being an annual scheme, and, Vicksburg being absolutely powerless itself to tax for past years, it is curious, indeed, if the revenue agent can make it do what it is armed with no power itself to do. If he may so compel, it must be in virtue of some express law strictly construed. If there be any such, it is ch. 34, p. 29, Acts 1894, and it would require an india-rubber stretch of construction to make that reach the point. Certainly there is nothing there expressly empowering municipalities to levy and collect back taxes, while it is notably true that the legislature has given that power to those under the municipal chapter of the code, § 3018. If the municipal board of Vicksburg had, of its own motion, ordered this assessment for back taxes, successful resistance by the citizen would be certain on the ground of *ultra vires. Adams* v. *Greenville,* 77 Miss., 881; s. c., 27 So.,

990. This cannot be questioned, and there is no law giving the revenue agent more power than the city has—no law giving him power above the city, or to infuse a power into it which it never had by law. Manifestly, the design of the act of 1894 was to enable the revenue agent to cause the exercise of existing powers, not to supply the want of them. No presumption can be indulged against a citizen taxpayer. The express law must exist to warrant the caption of his property *in invitum*. In fact, it has been gathered from its history that the law creating the very important office of revenue agent—an office quite ably and conscientiously filled by the present incumbent—was aimed at corrupt officers and against tax-dodging citizens and corporations evading taxation by withholding property from assessment for taxes duly levied, and there was no purpose to arm that officer with power superior to the legislative machinery which he may set in motion. When he can and does set it in motion, it can only run by the force originally given it by law, and not by a motive power created and applied by the revenue agent. Any other view would work singular results. Vicksburg might levy no tax whatever, and should not, unless her local needs require the money for her government. Here, as required by her charter, whether validly or not, she did not levy any tax on that class of solvent credits known as "vendor's lien notes," given for land situated within her limits. The citizen, therefore, could not list these and pay on them. Is he, or his estate, twenty years after, to be called on to pay, and thus, perhaps, be bankrupted for no fault of his own, at the instance of a state officer? The statement of the question would seem to carry its own proof that there could have been no such legislative purpose.

The other question presented by the record need not be considered or decided, but it is my judgment that, under the constitution of 1869, the legislature had the power to exempt from municipal taxation in the charter of Vicksburg that class of solvent credits which it did exempt, being vendor's lien notes

for land lying within the limits of that city. It, no doubt, was a measure of local importance there to encourage the transfer of real estate so that the people might procure homes. I know of no case which, on careful scrutiny, militates against this view; and this is entirely aside from consideration of the question of local self-government, which is the bed rock of the polity of this and all other states of the Union, as well as of the federal government itself.