CITY OF JACKSON *v.* WILLIAM A. WHITING ET AL.

1. MUNICIPALITIES.　*Incorporation.　Code* 1892, § 2921.　*Laws* 1898, *p.* 90.　*Constitutional law.　Constitution* 1890, *sec.* 88.　*Executive and legislative power.*

Code 1892, § 2921, Amended Laws 1898, p. 90, authorizing the governor to pass upon and approve applications for the incorporation of cities, towns, and villages not previously incorporated, is constitutional and does not submit to the executive questions belonging to the legislative department of the government, under Constitution 1890, sec. 88, providing that the legislature shall pass general laws for the incorporation of municipalities.

2. SAME. *Annexation of territory. Separate incorporation of adjacent territory. Code* 1892, §§ 2912a, 2913. *Laws* 1902, *p.* 154. *Code* 1892, § 2921. *Laws* 1898, *p.* 90.

Where a municipality initiates proceedings by the passage of an ordinance for the annexation of adjacent unincorporated territory under Code 1892, §§ 2912a, 2913, Amended Laws 1902, p. 154, authorizing the same, but providing that the ordinance should not become operative until published for thirty days, etc., and the electors of the territory sought to be annexed begin proceedings about the same time to form a separate municipality embracing the same territory, under Code 1892, § 2921, Amended Laws 1898, p. 90, authorizing the same to be done on three weeks' notice, and the governor approves of the separate municipality before the city ordinance becomes operative, that one of the two proceedings will be treated as effectual and prevailing over the other in which the initial steps were first taken.

3. SAME. *Appeal. Issue in Circuit Court: Time.*

The question whether a contemplated extension or contraction of the limits of a municipality be or be not reasonable, which is to be tried on an issue to be made up on an appeal to the circuit court from an ordinance proposing the same under Code 1892, §§ 2912a, 2913, Amended Laws 1902, p. 154, authorizing such procedure and appeal and providing for such issue, is to be determined by the facts and circumstances at the time of the adoption of the ordinance.

4. SAME. *Striking issues from files.*

Where a municipality, upon appeal from its ordinance proposing the annexation of adjacent territory, tendered in the circuit court the statutory issue, averring that the annexation proposed by its ordinance was reasonable, it was error to strike the issue so tendered from the files on a mere inference that the territory sought to be annexed was incorporated territory at the time the ordinance was adopted.

5. SAME. *Code* 1892, § 2921. *Laws* 1898, *p.* 90. *Petition for charter. Governor's power and duty.*

In acting on a petition, under Code 1892, § 2921, Amended Laws 1898, p. 90, providing for the incorporation of unincorporated hamlets, the governor is required only to determine whether or not the petition is sufficient and sufficiently signed and whether it has been published as required by the statute. If these ques-

tions be resolved affirmatively, he is required to issue his proclamation of incorporation and is without power to enlarge or contract the proposed municipality.

FROM the circuit court of, first district, Hinds county.

HON. DAVID M. MILLER, Judge.

The city of Jackson, plaintiff in the circuit court, was the appellant; Whiting and others, defendants in the circuit court, who had appealed to that court the city ordinance proposing to extend the city limits, were appellees in the supreme court.

The facts are fully stated in the opinion of the court.

*McWillie & Thompson,* for appellant.

At the time of the passage of the ordinance enlarging the boundaries of Jackson, there can be no question but that the municipal authorities of the city had the right to pass it. The ordinance, when passed, was a valid ordinance. It did not take effect at once in the sense of extending the city limits instantly, but it was a valid ordinance, and it invested the city with a right. The right was to have the limits extended, as provided in the ordinance, by mere lapse of time, unless an appeal was prosecuted within the time limited therefor, and if an appeal were so prosecuted, to have the limits extended unless upon an issue made, as to the reasonableness or unreasonableness of the proposed extension, it should be adjudged by the circuit court that the proposed extension was unreasonable. The right just stated was vested in the city when the ordinance was passed. The right stated could not be defeated by the governor of the state, it could only be defeated in the way provided by the statute for so doing. At the time of the passage of the ordinance, Duttoville was not incorporated, nor was the territory which the city proposed to annex incorporated territory. If there be evidence in the record (and if there be it is slight, too slight to predicate a judgment of it) showing or tending to show that the inhabitants of Duttoville were getting up a petition or publishing one by posting, asking the

governor to incorporate that territory, these acts and doings by the inhabitants had no legal effect. The petition was not presented to the governor until long after the passage of the ordinance by the city of Jackson. It is shown of record to have been presented to the governor on the 13th of August, 1903, and the ordinance was passed on the 23d of July, 1903. Duttoville was not chartered as a village until the 20th of August. The acts and doings of the people of Duttoville, before presenting their petition to the governor, had no legal effect whatever on the rights of the city of Jackson. When this case on appeal from the municipal authorities reached the circuit court, the law provided in express terms what should be done with it there. It is provided, § 2913, Code 1892, and by the amendment of 1902, that the case was to be tried on an issue to be made up, "and the question shall be whether the proposed extension of the corporate limits be or be not reasonable." The city of Jackson acted upon the idea that the circuit court would follow the course of procedure laid down in express terms for its guidance by the law of the state. So assuming, it tendered an issue in accordance with and in the very language of the statute. The appellees would not join therein, nor would the circuit court require them to do so. They carried the court away from the positive mandate of the statute for its guidance, and brought into the case the consideration of supposed political or governmental difficulties that might arise from obeying the law.

If the statutes be inconsistent, this was no excuse for the circuit court disobeying direct commands for its government. The provisions of the code about the incorporation of hamlets and unincorporated villages pertains to an entirely different subject-matter. Sec. 2913 of the code, and the amendment thereto, directs what was to be done in the circuit court and by the circuit court. Sec. 2921 may contain directions to the chief executive of the state, but certainly none for the government of the circuit court. The governor of the state undertook

to follow; and doubtless thought he was following, sec. 2921 when he granted the Duttoville charter, and believed that it laid down the rule for his conduct in the matter then before him. He must have acted upon the idea that his grant of the charter to Duttoville would not and could not be binding upon the circuit court in the trial of the appeal in this case, and no doubt he thought that the circuit court would follow the statute laying down the rule for its guidance.

The only question in this case is this: Shall the circuit court be compelled to obey the statute, or may it, at pleasure, depart from the rules of procedure laid down for its government? This court, we feel assured, will not anticipate political or governmental troubles which may be imagined to result from following a statute, and because thereof ignore the statute. If the court follows the statute, the city of Jackson is entitled to a trial as to whether the proposed extension of its boundaries be reasonable, and if a trial of that issue shall result in its favor, then by the language of the law itself, the boundaries are extended.

How anything that could be done by the governor or by the executive department of the government can defeat positive legislation, we cannot understand. *Ita lex scripta est.* Upon appeal in a case like this, an issue shall be made up for trial in the circuit court and that issue is whether the proposed extension of the corporate limits be or be not reasonable. Surely the presentation of the petition to the governor for the incorporation of Duttoville does not render wholly ineffectual the ordinance of the city of Jackson passed before the petition was so presented. The ordinance of July 23, 1903, was not a dead thing. The mere lapse of time would have put it into full operation without an appeal. Could the governor repeal that ordinance and wholly destroy it? If so, by what authority? Can any act of the governor control the circuit court in the trial of a case when the statute itself says what the court shall do? If so, by what authority? The circuit court itself could not

defeat the ordinance of July 23, 1903, otherwise than by adjudging, on the verdict of a jury to that effect, that it was unreasonable, and yet in· this case the circuit court repudiated the law laid down for its government, became confused and destroyed the ordinance, and it did this upon a mere motion based on a mere conjecture.

Suppose it should result from inconsistent legislation that two municipalities covered the same territory. This would not be the fault of the courts, nor would it be any reason for the courts to disregard a plain statute. It would be a political or governmental complication for legislative correction, this and nothing more. Instances are not wanting of two municipalities covering the same territory, and no great crisis in the affairs of men resulted as a consequence.

*Williamson & Wells,* on the same side.

With the exception of constitutional limitations, the power of the legislature over public corporations is supreme; it may change, divide, and even abolish them, as it deems best. *Dartmouth College* v. *Woodward,* 17 U. S., 518; *Girard* v. *Philadelphia,* 74 U. S., 1; 1 Dill. Municipal Corp., 139; *Vestal* v. *Little Rock,* 11 L. R. A., 778 and note. This right of the legislature has been fully discussed and adjudicated by this court, and the law in this state is laid down in the following language:

"In their creation or abolishment the legislature is under no legal compulsion to consult the wishes of the inhabitants. . . . Their charters are altered or repealed, and their boundaries are contracted or enlarged, at the will of the general assembly, either with or without the consent of the persons affected thereby, as the legislature may see fit." *Martin* v. *Dix,* 52 Miss., 53.

If the lower court was correct in its ruling on the law in this case, no suburb of any city in the state of Mississippi, which contains as many as one hundred inhabitants, can ever

be included in the corporate limits of the city, if such action be opposed by two-thirds of the electors residing in the suburb. It might be desired by a large majority of the inhabitants. It might be desired by all the taxpayers. It might be conceded that the proposed extension of the city limits was entirely reasonable. The law providing for the extension of the city limits may have been strictly complied with, but if two-thirds of the electors, none of whom may be property owners or taxpayers, who learn of the proposed extension, choose to sign a petition praying for separate incorporation, and publish the petition for three weeks, and present it to the governor, the ordinance extending the city limits will be defeated.

The effect of a supersedeas is not to vacate or annul the judgment or decree, but merely to stay further proceedings upon it, and leave matters in the condition in which they were when the supersedeas took effect, and until the appellate court can hear the parties on the questions involved. *Powell* v. *Florida Co.*, 26 So. R., 700; *Randles* v. *Randles*, 67 Ind., 107; *Curtis* v. *Root*, 28 Ill., 367; *Gruner* v. *Westin*, 66 Tex., 209; *Martin* v. *Land Co.*, 94 Va., 28; *People* v. *Stephenson*, 98 Mich., 218.

The question which was involved in the appeal of the instant case to the circuit court was whether or not the extension of the corporate limits of the city of Jackson was reasonable or unreasonable, and the appeal from the ordinance and the bond given, only operated as a supersedeas until the appellate court could hear the parties on that issue. But the lower court struck out the tender of this issue and dismissed the case for the reason that, pending the appeal to the circuit court, a portion of the territory sought to be included in the city limits had become separately incorporated as the "Village of Duttoville" and had been subsequently proclaimed as the "Town of Duttoville."

We submit that the Chapter on Municipalities should be given a reasonable construction by the court. The sections of that chapter providing for the enlargement of cities and towns

and for the incorporation of hamlets and unincorporated villages, should be so construed as that under proper and reasonable conditions, the corporate limits of growing cities could be enlarged, even though two-thirds of the electors in the suburb are opposed to it, and so that hamlets and unincorporated villages could secure benefits of incorporation only where the public interest required it.

These sections should not be so construed, so that in every instance where it was sought to reasonably enlarge the boundaries of a city by the annexation of its suburbs, the ordinance can be defeated by the simple expedient of a petition, signed by two-thirds of the electors, for separate incorporation as a village, and by an appeal from the ordinance of enlargement, in which the issue of the reasonableness of the enlargement is not allowed to be tried because of the separate incorporation pending the appeal.

Under such a construction of the law as was adopted by the court below, the cities and large towns of the state will become surrounded by hamlets and villages, over which they can exercise no jurisdiction or control, which would be a constant menace to the public health of the city, a haven of refuge for thieves, pickpockets, and midnight marauders, and the sanitary and police officers of the city would be powerless in the premises. In cases of epidemic or infectious diseases the city would be powerless to impose any restrictions or to enforce any police or sanitary regulations except upon those who resided within the restricted corporate lines, and yet would be surrounded by a large population, who are in reality a part of the city, but who have become incorporated under the claim and pretense that they constitute a hamlet or village.

Sec. 2921 of the annotated code, providing "How hamlets and unincorporated villages may become incorporated," is in violation of the constitution.

Sec. 88 of the constitution of the state of Mississippi makes it apparent that the power to create municipal corporations is

vested exclusively in the legislative department of the govern-
ment. If it is conceded that the power to create such corpora-
tions is vested exclusively in the legislature, the question arises,
Can this power be delegated, and if so, to whom and to what
extent?

We admit that the power can be delegated to some extent, but
it cannot be done to the extent attempted.

The fundamental idea of a municipal corporation proper,
both in England and in this country, is to invest compact or
dense populations with the power of local self-government. It
is necessary in so doing to draw the lines and define the limits
of the place and people to be incorporated. This is under our
laws and constitution a legislative function. 1 Dillon Mun.
Corp. (3d ed.), sec. 183; *Galesburg* v. *Hawkinson,* 75 Ill., 153;
*People* v. *Carpenter,* 24 N. Y., 89; *People* v. *Bennett,* 29 Mich.,
451; *People* v. *Nevada,* 6 Cal., 143; *Jeringham* v. *Madison-
ville,* 102 Ky., 313; *In re North Milwaukee,* 33 L. R. A., 638.

*Wells & Wells,* for appellees.

Duttoville took the initiative of her own accord, and did not
start after the city had started, in an effort to cut off the city.
Duttoville, having begun three days before Jackson in the race
which Jackson precipitated by attempting to prevent the in-
corporation of Duttoville and to extend its limits over the ter-
ritory of the proposed village of Duttoville, was favored by
the statute law, Laws 1898, chapter 74, in the fact that in
the incorporation of a village the petition has to be posted
or published only three weeks, while in the extension of the
limits of a town or city, Laws 1902, chapter 103, the ordinance
must be posted or published for three weeks, and also one month
must elapse from the passage of the ordinance before it can
become operative.

Duttoville prepared and posted her notices on July 20th, and
on August 20th Governor Longino completed the proceeding by
his proclamation incorporating the village and thus making it

incorporated territory. Jackson only took her first step in her proceeding on July 23d, and as one month had to elapse besides the other steps being taken before it was completed and jurisdiction given, that even had no appeal been taken it could not have been completed before August 23d or three days after Duttoville had been granted full power and jurisdiction, and become a legal entity, and after the territory sought by Jackson as unincorporated territory had become incorporated territory. It will also be seen that the last step of the three necessary to be taken by Jackson was not taken until September 2d—to wit, the adjudication by the Board of Mayor and Aldermen as to the fact of publication and notice, until which the extension was not legal.

But it is insisted by opposing counsel that the ordinance passed on July 23d was "not a dead thing." While it may be true that the ordinance is not a dead thing, the statute itself shows that it is not a live thing, because it had no force or effect, nor did it grant any power to the city in any manner or form over the territory.

But if that ordinance passed by the city of Jackson on July 23d was not a dead thing, what about the petition for incorporation posted on July 20th by Duttoville? Was that a dead thing? Surely not. If it be true that he who took the first step in the proceeding intrenched himself impregnably, then Duttoville took that first step. If it be true that he who first completed his proceedings won, then Duttoville is the victor and must be awarded the palm.

But the court will see that the ordinance of the city of Jackson is not yet in effect, due to the appeal. On December 26th Duttoville was reclassified as a town of five hundred and forty inhabitants. Suppose this court should reverse this case and send it back for a jury trial "on an issue to be made up there," and the question should be "whether the proposed extension be or be not reasonable." Would the trial be as of date July 23d, or at the time of trial? Most assuredly it would be

as of date and under conditions at the time of trial. If not, the statute would have read "and the question shall be whether the proposed extension was or was not reasonable." Would it be a reasonable extension if it was illegal? Most certainly not. If the issue be on the facts as of the date of trial, then why will it not be necessary for the court to give a peremptory instruction for Duttoville, because of the fact that Duttoville is a town of over five hundred inhabitants, which cannot be annexed or combined except by its consent as provided for in the first paragraph of sec. 1, chapter 103, Laws 1902? It would indeed be a vain thing to submit to a jury to pass on its reasonableness a case of extension illegal on its very face under the same law that Jackson insists should be enforced by a jury trial.

It has been suggested that if the law be followed as written it will end each time on the suburb incorporating itself in the shorter time allowed for incorporation over extension, and thus no extension be possible of a city over an unwilling suburb. Our answers to this are as follows:

1. We distinguish this case at bar from such a supposition in that Duttoville took the first step and Jackson tried to defeat her, not Duttoville tried to defeat Jackson.

2. If following the law will end in a series of villages and towns around the cities which villages and towns do not desire to unite with the city and that is an evil which should be corrected, then it should be done by legislative, not judicial, enactment.

3. But the law contemplates two or more adjoining each other and allows them to stay separate unless they voluntarily unite. Laws 1902, ch. 103, p. 155.

It has also been suggested that Duttoville before incorporation was not "any unincorporated village, town or city," as is provided by law to be incorporated under chapter 74, Laws 1898.

Our answer to this is as follows:

Whose duty is it to inquire into the facts, and if proper issue the proclamation? Manifestly the governor. Did he perform that duty? He did. Did he consider it carefully? The petition shows that it was held up from August 13th to August 20th, and it was argued and fought over there fully by the city of Jackson, and Jackson lost. Was there any evidence taken in the lower court when our motion was made in regard to Duttoville and the proclamation of incorporation by the governor so as to attack its validity? None in the world. Its validity was never questioned there, or here in any brief now on file for appellant, and both are now on file. Then can it be said that now in the supreme court a collateral attack, supported by no evidence whatever, save that Duttoville lies alongside of Jackson, can be made on the solemn proclamation of the governor, who examined thoroughly into the matter; and that said proclamation can now be declared null and void, when it is not only regular on its face, but also absolutely regular and valid, and all the proceedings leading up to it are valid, as shown by the record itself? Will this court, merely on the statement of counsel as to what they want to prove in some other trial, sustain this collateral attack? Such a proposition is preposterous.

*Alexander & Alexander,* on the same side.

The most that can be said in behalf of either party is that they have both strictly followed the statute applicable in each case, and under these statutes Duttoville became conclusively first a village before the ordinance could in any event become operative, and afterwards became a town before the appeal was decided and before the ordinance can now become operative.

But counsel for appellant seem to treat lightly the proceeding before the governor as if it was an unauthorized interference with the statutory rights of the city. They forget that

the statute under which the citizens of Duttoville acted and under which the governor issued his second proclamation is as binding as the statute under which the city acted. When, where, and how does § 2912 (*a*) of the code become any more the law of the land than § 2921 or § 2918? If the city says it followed the statutory proceeding, we reply that Duttoville followed a statutory proceeding just as plainly marked out and applicable. The proceeding before the governor was in one respect of more dignity than the ordinance of the city for enlarging its boundary, in that the ordinance is not conclusive, but subject to appeal, and to the reconsideration by the board, and to the decision of a jury, whereas the proclamation of the governor incorporating a town and classifying it is conclusive, and no remedy is given by appeal from it.

The act of 1902 forbidding the annexation of territory which is already incorporated is merely an amendment of the general law as to municipalities. It is not competent by a general statute extending municipal limits to annex part of an incorporated borough. *Darby* v. *Sharon Hill,* 112 Penn. St., 70; *McAskie's Appeal,* 154 *Ib.,* 24; *Devoe's Appeal,* 56 *Ib.,* 164.

The court must determine as a judicial question whether the law is complied with by the municipal authorities. This objection is jurisdictional. *Forsythe* v. *Hammond,* 142 Ind., 520. The city cannot extend so as to take in a municipality of a lower class. *City of Omaha* v. *South Omaha,* 51 Neb., 178; 1 Dillon on Mun. Corp. (4th ed.), sec. 184; *Ib.,* sec. 419.

If it does not appear that the territory as a whole should be annexed, it is error to annex part of it. Dillon on Mun. Corp. (4th ed.), sec. 419; *Vestal* v. *Little Rock,* 4 Ark., 321; Smith Mun. Corp., sec. 419.

The ordinance is of course entire, and if illegal as to part it fails altogether. It was in the power of the aldermen of Jackson to pass separate ordinances annexing distinct parts of the territory. For reasons of its own it put the whole matter in one ordinance, and of course the courts and jury cannot make

the boundary for the board. If part of the territory is already incorporated, the whole ordinance fails.

, It is true the only issue of fact to be tried by a jury on appeal is the reasonableness of the ordinance. Certainly if the ordinance is obviously void, the court will not be required to do a vain thing and proceed under it. The city could not annex incorporated territory, and if it be shown to the court that the territory sought to be annexed was incorporated, the court, however this fact be shown, should dismiss the proceeding. Suppose the city of Jackson should pass an ordinance annexing the city of Meridian or Vicksburg, and an appeal were taken to the circuit court, would that court be required to submit the reasonableness of the extension to the jury? Suppose the ordinance of the city appeared on its face to have been passed at a wrong place, or by a minority of the board present, or not to have been published at all or improperly published, would the court be required to ignore such matters? We think not. Surely the court would not require the parties to introduce scores of witnesses to prove the reasonableness of an ordinance when it clearly sees that the ordinance is not enforceable for reasons of law.

It is contended by appellant that if our view of the law is correct no suburb of any city can ever be included in the corporate limits, and the rule *ab inconvenienti* is invoked. The answer to that is: First—That the court was not concerned with the wisdom of the legislation on these two subjects. If each party followed strictly a statutory right and Duttoville became under the statute an incorporated town before the ordinance became operative, the evil, if such you can call it, is not one for the court, but one for the legislature to correct. Second—It is an erroneous assumption that the legislature looks alone to the interest of the city. It looks as much to the interest of the citizens of the territory to be annexed. It may be a law of nature that the big fish eat the little ones, but it is not intended to be the law of municipalities. The rights are often trampled upon;

that cities under the impulse of pride as to size or population, or under the necessity of greater revenue, are always under the temptation to annex territory, and to do so prematurely. We deny that the city of Jackson has any common law right, or any statutory right, or any moral right, to take in the citizens of Duttoville without their consent. The only right it has is a purely statutory right, and in this statute the rights of the people of the adjacent territory are jealously protected. If there is any public policy which encourages the building of cities with all their multiform vices and political corruption, we are not aware of it. We have been taught that the right of local self-government is the right most emphasized under our form of government. It is said, however, that under the rule we invoke whenever a city begins to take steps to annex territory, the people of the territory will rush to the governor and get a charter and defeat the will of the city. The answer to this is: First—That if two-thirds of the electors in the territory do not want to be annexed they have a right to go to the governor and have themselves organized into a municipality. The consent of the governed is never lost sight of in our government. In the second place, if the city furnishes advantages and is giving a beneficent municipal government, the territory to be annexed cannot be presumed to oppose such annexation, and the danger conjectured is a very remote one. In the next place, the governor cannot be presumed to lend himself to a fraud.

Argued orally by *Ben H. Wells,* and *R. H. Thompson,* for appellant, and by *W. Calvin Wells, Jr.,* and *C. H. Alexander,* for appellees.

TRULY, J., delivered the opinion of the court.

On the 23d day of July, 1903, the board of mayor and aldermen of the city of Jackson at a regularly called meeting adopted an ordinance extending the corporate limits of the city. This ordinance was duly published as required by law, but

before the expiration of thirty days after its enactment certain citizens appealed to the circuit court, protesting against said ordinance becoming operative. At the ensuing term of the circuit court, when the case came on for trial, the citizens who had appealed moved to strike out the tender of issue which had been made by the attorneys for the city. The only material ground assigned by the motion to dismiss the tender of issue was this: "A large part of the territory included by the ordinance is the incorporated town of Duttoville, which protests against amalgamation, and cannot, by the proceeding, be brought into Jackson. Said territory is that described in paragraph 3 of the ordinance." After considering this motion, the circuit judge entered the following order: "Came on this day to be heard the motion of the appellants to strike out the tender of issue by the city of Jackson and to dismiss the proceeding, and the same, together with the evidence adduced in support thereof, having been argued and considered, it is ordered that the motion be sustained, and the proceeding be dismissed; to which order and judgment the city of Jackson excepted." The evidence on which this order was based, as disclosed by the record herein, was: (1) Charter of the village of Duttoville, with all accompanying papers. (2) The charter of the town of Duttoville, with all accompanying papers. (3) The admission that a part of the territory described in said charters was embraced in the ordinance enlarging the limits of the city of Jackson. Among the papers accompanying the charter of the village of Duttoville and attached to the proclamation of the governor incorporating said village is an affidavit of certain individuals stating that the notice attached thereto "was posted in three conspicuous places for three consecutive weeks." This affidavit was made on the 13th day of August, 1903. The paper attached to that affidavit, denominated a "notice," is a petition setting forth the territorial limits of the proposed village of Duttoville, and purporting to be signed by two-thirds of the electors resident therein. It further appears from a

recitation in another paper attached to said proclamation that the petition was submitted to the governor on the 13th day of August, 1903, the same day that the affidavit of posting was made. The governor's proclamation incorporating the village of Duttoville and specifying its boundaries as defined in the petition is dated the 20th of August, 1903. The record also discloses that subsequent to this action, but before the trial in the circuit court, by proper proclamation, the village of Duttoville was by the governor elevated to the rank of a town, but, in our opinion, these subsequent proceedings were not material, and do not affect the question at issue.

The laws bearing on the questions here involved are: § 2921, Code 1892, as amended by ch. 74, p. 90, Acts 1898, which is as follows:

"Sec. 2921. *How unincorporated Villages, Towns, and Cities May Become Incorporated.* Whenever a petition, signed by two-thirds of the electors of any unincorporated village, town, or city, shall be presented to the governor setting forth the metes and bounds of their city, town, or village, stating the number of inhabitants therein and praying incorporation, he shall inquire into the facts. If he finds the petition sufficient and sufficiently signed, and it be shown to his satisfaction that it has been published in full for three weeks in some newspaper of the proposed municipality, if there be one, and if not, by posting in at least three conspicuous places in the village, town, or city, and that the place contains at least one hundred inhabitants, he shall, by proclamation, declare such village, town, or city incorporated, defining its limits and boundaries, and fixing its name as the village, town, or city of ——. Such proclamation shall be filed in the office of the secretary of state, and remain a record thereof."

And § 2912a and § 2913, Code 1892, as amended by ch. 103, p. 154, Acts 1902, which are, so far as pertinent to this issue, as follows:

"Sec. 2912a. The limits and boundaries of the existing

cities or towns shall remain as now established until altered, as herein provided. To enlarge or contract the boundaries of a city or town by adding thereto adjacent unincorporated territory, or excluding therefrom any part of the incorporated territory of such municipality, it shall be necessary for the municipal authorities to pass an ordinance defining with certainty the territory which it is proposed to include in or exclude from the corporate limits and also defining the entire boundary as changed.

"The ordinance herein provided for shall not become operative until one month after the passage thereof, and until the same shall have been published in some newspaper of the city or town for three weeks, if there be a newspaper therein, and if none, then a newspaper having a general circulation therein for that time, and in other events by posting written or printed copy of the ordinances of said city or town in not less than three public places for said time, when it or they shall become operative, unless an appeal be prosecuted.

"Sec. 2913. The appeal from the ordinance shall be to the circuit court, and shall be tried on an issue to be made up there, and the question shall be whether the proposed consolidation, extension, or contraction of the municipality or municipalities be or be not reasonable."

It is first contended by appellant that § 2921 is unconstitutional, in that it submits to the decision and discretion of the executive department of the state questions which properly belong to the legislative, a co-ordinate branch of government. Without elaborating our views in this regard, or attempting to reply in detail to the ingenious and plausible arguments made, we simply announce as our conclusion that the law is not violative of any of the provisions or of the true intent of the constitution of the state. Sec. 88 of the Constitution of 1890 directs that the legislature "shall pass general laws, . . . under which cities and towns may be chartered and their charters amended, and all such laws shall be subject to repeal or

amendment." In considering a kindred question we have recently decided that sec. 88 of the constitution was a command to the legislature to devise some general plan of easy operation under which municipalities might be chartered, or their charters amended so as to render resort to the law-making power in each instance unnecessary. *Yazoo City* v. *Lightcap,* 82 Miss., 148 (33 South., 949); *Adams* v. *Kuykendall,* 83 Miss., 571 (35 South., 830). We think § 2921 a valid step taken by the legislature in obedience to the mandate placed upon it by the section cited. It is not an unauthorized blending of the duties of the executive and legislative departments of government. The law in question does not require the governor to do aught more than decide the question of fact as to whether or no the petition presented to him is sufficient and sufficiently signed, and if it has been posted or published as required therein. These questions being determined affirmatively, the governor shall, not may, issue his proclamation declaring such village incorporated, and "defining its limits and boundaries." We think the argument of appellant that the governor is vested with the discretionary exercise of legislative power in defining the limits of the proposed municipality is based upon a misinterpretation of the statute. The true construction, as we gather from the context of the section under review, is this: The governor defines the limits of the municipality in his proclamation of incorporation by simply reciting those territorial boundaries which are required to be set out in the petition for a charter. Should he attempt to define the limits in any other manner, or to change the boundaries stated in the petition, his action would always be open to the doubt of whether the electors signing the petition on which he acted comprised the requisite proportion necessary under the terms of the law. And this doubt and uncertainty would exist whether he undertook to extend or contract the territorial boundaries embodied in the petition presented to

him. The plan of the legislature, as disclosed by this section, is, to our minds, perfectly plain, simple, and easily followed.

The appellant further contends that the court erred in dismissing the tender of issue which it presented when the case was reached for trial. The provision of law governing this precise question is found in § 2913, before cited. The first clause thereof is as follows: "The appeal from the ordinance shall be to the circuit court and shall be tried on an issue to be made up; and the question shall be whether the proposed extension or contraction of the corporate limits be or be not reasonable." The city of Jackson insists that the language of the statute limiting the matters to be submitted to the jury to the sole inquiry of whether the proposed ordinance of extension "be or be not reasonable" restricts the consideration also to the time at which the ordinance was first enacted, and that the question of reasonableness of the action of the municipal board in adopting the proposed ordinance is to be considered in the light of the circumstances which confronted the board at the time the ordinance was adopted. Arguing from this, it is said further that, as the ordinance at the date of its adoption enlarged the boundaries of the city of Jackson only "by adding thereto adjacent unincorporated territory," no subsequent change of condition as to any of the territory so included could shed light upon the question of whether the action of the board was or was not reasonable. The reply to this argument, as made by appellees, is that, inasmuch as a portion of the territory embraced by the ordinance was incorporated prior to the submission of the cause to a jury for decision, there was no longer any controverted question to be determined, for the reason that a portion of the territory had already, under the provisions of law, been placed beyond the scope of the ordinance adopted; and therefore the ordinance must necessarily fail because it included territory which was "adjacent," but which was no longer "unincorporated." It will be noted that, while an ordinance enlarging the boundaries of a city does not

become operative until publication is made and thirty days after its adoption have elapsed, an unincorporated village can procure a charter by posting or publishing legal notices for only three weeks. The conflict between the plans devised by the statutes being considered is apparent, and while it is impossible to reconcile them in all of their terms and provisions, we must still endeavor to so harmonize them as to effectuate as far as practicable the design of the legislature. While this design is presented dimly and uncertainly by the vague and indefinite terms of the two acts, and while the provisions are in some respects irreconcilable, after mature consideration we are of the opinion that it was. the legislative intent to inaugurate a scheme by which the charter should follow the first initiatory step taken in pursuance of either act; otherwise a city could never extend its corporate limits, for the obvious reason that an ordinance of extension only becomes operative thirty days after its passage, while the necessary steps to procure incorporation of an unincorporated village can all be taken in three weeks. Hence, though a city might at any time adopt an ordinance extending its corporate limits, and though such extension might not only be reasonable, but an imperative necessity for the protection and preservation of the public health and general welfare, still the electors of adjacent unincorporated territory, by action subsequently taken, could avoid the extension by the city, and procure a charter before the ordinance became operative. The result of this view would be that the inhabitants of a suburb lying immediately adjacent to a city who share the many conveniences and advantages of city life, including increased railroad facilities, incidental protection against fire, and the enhanced value of property brought about by the enterprise and progress of. the municipal government, could yet refuse to share the burden of taxation which such benefits entail by not procuring a charter for themselves, and yet having the power of defeating any effort, no matter how timely or wise, on the part of the city, to extend its own

limits.   This is not the true view.   It is no sufficient answer to say that the inhabitants of such suburb have the right to have such territory remain unincorporated, if they prefer.   It is the fundamental principle of our form of government that the liberty of the individual must be subordinated to the public good, and cases can easily be imagined where the safety, welfare, and health of the entire city might be imperiled by the location at its very gates of an unincorporated community which would be beyond its police power, and could defy its quarantine and sanitary regulations.   The legislature did not contemplate encouraging this condition of affairs, and yet it would be the logical result of a holding that by action subsequent to an ordinance of extension an unincorporated village could defeat the effort to include it within the limits of the city.   No city would do the idle thing of adopting an ordinance with full knowledge that its becoming operative and effective was dependent entirely on the wishes of the very persons whose property was thereby subjected to taxation; especially when the parties concerned were already sharing to a large extent the advantages which rendered the imposition of taxes necessary.

Nor can we assent to the opposite view, contended for by appellant, that the charter of incorporation of the village must actually have been issued prior to the adoption by the city of the ordinance of extension in order to prevent the application of the ordinance.   This construction would render it impossible, except in rare and improbable cases, for unincorporated territory lying adjacent to a city to procure a charter except by the acquiescence of the municipal authorities of the city.   If this view be sound, no matter when or under what circumstances the electors residing in unincorporated territory so situate should decide to seek incorporation, though they might faithfully comply with every requirement of the law, at any moment before the governor shall by proclamation declare such corporation to be an accomplished and completed act the city authorities may adopt an ordinance which will defeat the at-

tempted incorporation and render their efforts unavailing. This construction of the statute is likewise too narrow and restricted, and tends to defeat the object of the legislation.

It is our conclusion that in determining whether an ordinance extending the limits of a municipality be or be not reasonable, the action of the board of mayor and aldermen must be considered solely in the light of the conditions which confronted it at the time the ordinance was adopted, and the reasonableness or validity of the ordinance would in no wise be affected by any action which might be taken by others subsequent to its passage. So in the instant case the action of the board of mayor and aldermen of the city of Jackson must be judged from the point of view which they occupied at the time the ordinance extending the limits was adopted, and when the cause is submitted to a jury the testimony as to the reasonableness of the ordinance must be confined to the circumstances existing at the time of its enactment. If, therefore, on the 23d of July, 1903, when the ordinance was adopted, it did in fact only embrace "adjacent unincorporated territory" within legal contemplation, the fact that any part of the territory so embraced subsequently procured a charter of incorporation, though in a strictly legal manner, would in no wise affect or bear upon the question of the reasonableness of the proposed extension. It appears from this record, and from the argument of counsel, that the court below held that the mere fact that at the date of the hearing in the circuit court a portion of the territory which was sought to be added to the city of Jackson had become incorporated was of itself sufficient to render the ordinance unreasonable and inoperative. This is not the correct view, and the court erred in dismissing the tender of issue presented by the city and peremptorily rendering judgment against the city. Upon another trial hereof the question to be submitted to the jury, as above indicated, is whether the proposed ordinance extending the limits of the city of Jackson was or was not reasonable at the date of its

adoption.  As bearing on this it is, of course, a question of vital and decisive importance whether or not at that date the citizens resident in the territory subsequently incorporated as the village of Duttoville had taken any legal initiatory step necessary to the incorporation which they ' subsequently obtained.  If, as a matter of fact, it should appear that prior to the passage of the ordinance by the board of mayor and aldermen of the city of Jackson the inhabitants of Duttoville had already taken the initiatory step required by law by preparing a properly signed petition and in posting notices in the manner and places prescribed by law, then the subsequent action of the board of mayor and aldermen could not deprive them of the rights which they had thus acquired under the terms of the law.  If, on the contrary, it should appear that this action on the part of the citizens of Duttoville in posting the notices was subsequent to the adoption of the ordinance by the city of Jackson, then they gain nothing by such action, and their subsequent incorporation was ineffective, provided the jury should decide, without regard to this, that the ordinance was otherwise reasonable.  The record as presented to us here is barren of any proof more substantial than bare inference on which the trial judge could have based a decision that at the time the ordinance was adopted any but unincorporated territory was included therein; nor can it be assumed that, because the law requires the notice to be posted for three consecutive weeks, this renders it at all certain that the notices were in fact posted, in conformity with the law, prior to the adoption of the ordinance by the city of Jackson.  And assuming that this is an inference logically to be deduced from the statement of the dates, there is still no evidence or suggestion to sustain the assumption of the existence of the other necessary facts that the petition was sufficiently signed, and that the notices, if posted, were posted in the manner and in the number of places required by the law.

*Wherefore the judgment of the circuit court is reversed, and the case is remanded for a new trial.*