WIRT ADAMS, STATE REVENUE AGENT, v. NATCHEZ, JACKSON
       & COLUMBUS RAILROAD COMPANY ET AL.

COUNTIES.    *Ownership of railroad stock.    Legislative control.*

> Shares of railroad stock owned by a county are not subject to legis-
> lative control when there is no reservation of such power in the
> statute authorizing their acquisition.

FROM the chancery court, first district, of Hinds county.

HON. HENRY C. CONN, Chancellor.

Adams, state revenue agent, the appellant, was the complain-
ant in the court below; the railroad company and others were
defendants there.    The facts are fully stated in the opinion of
the court.

*Calhoon & Green*, for appellant.

Under the code of 1892, § 4190, etc., the powers of the reve-
nue agent extended only to bringing suits touching "revenue"
and taxes.    Experience showed the necessity of protecting the
public in its rights in a wider scope than mere "revenue"
suits, and in 1894 the powers of the revenue agent were ex-
tended to other and different classes of cases.    This court sug-
gested the propriety of an extension of the powers of the reve-
nue agent.    *McBride v. State*, 70 Miss., 716.

Tax collectors would confine their acts to taxes assessed, and
assessors would assess only current taxes.    County treasurers
would confine their official acts to the receipt and disbursement
of public funds.    The boards of supervisors would transact the
routine business of the county, and generally official acts would
be confined to current business, and this would be done "along
the lines of least resistance."    It was essential that there should
be a public officer whose duty it would be to look after the

transactions—misfeasances and nonfeasances—of public officers and to protect the citizen against their results. What could illustrate the wisdom of a statute with such purpose more than the instant case. Five hundred thousand dollars of the peoples' money invested in the capital stock of a railroad, and the certificates not even in the possession of the proper officers, and the stock apparently made worthless by a "deal" whereby the whole assets of the one company becomes the property of the other, and the people of Adams, Jefferson and Hinds counties stand unprotected for eight years, and until this suit is brought by the revenue agent.

By chapter 34, Laws 1894, the code is amended so as to confer, § 2, a general power to sue "all officers, county contractors, persons, corporations, companies and associations of persons for all past due and unpaid taxes of any kind whatever, for all penalties or forfeitures, for all past due obligations and indebtedness of any character whatever, owing to the state or any county, municipality or levee board and for damages growing out of the violation of any contract with the state or any county, municipality or levee board. He shall have a right of action and may sue at law or in equity in all cases where the state or any municipality or levee board has the right of action or may sue . . . to investigate the books, accounts and vouchers of all fiscal officers of the state, etc., and to sue for, collect and pay over all money improperly withheld from either, and he has the power to sue and right of action against all such officers and their sureties to collect any such moneys."

Thus instead of the revenue agent being confined to collecting "revenue" and taxes from "fiscal" officers as under the code, he has a general power of attorney to protect and enforce the rights of the public against persons violating them, whether "fiscal" or other officer, whether an individual or a corporation, and whether by contract or for a penalty or for a forfeiture. No longer is "revenue" the basic principle of his powers. A remedial statute to cure a recognized dereliction

of duty should be construed, not strictly, but as broadly as the evil to be protected against requires.

*James Fentress* and *Mayes & Harris*, for appellee.

1. A municipality may have a vested right of private property, even as against the state. Cooley's Con. Lim., 288; 2 Kent's Com., 305; Cooley on Taxation, 688. The principle has been stated with perfect fullness and clearness by the judicial decision of this court since the year 1850. *Trustees* v. *Aberdeen*, 13 Smed. & M., 645. In that case the charter of the town of Aberdeen, passed in 1837, conferred upon the municipal authorities the sole power to grant licenses to sell liquors and to appropriate the money arising therefrom for municipal purposes. In 1848 an act was passed granting the money arising from liquor licenses to the Aberdeen Female Academy. The town authorities refused to pay over to the academy. Suit was brought to recover the same by that institution. Mr. Justice Clayton said: "The grant in this case is of a franchise. . . . . But it is urged there is a distinction between powers and privileges conferred upon a public corporation for public or municipal purposes and those conferred for its private advantage or emolument, and that the franchise in this case belongs to the former class and may be repealed at pleasure. In our opinion, the grant in this case partakes of the character of both of these incidents. The power to grant license was given for public purposes. . . . . So far as relates to the power of granting the license, the legislature might repeal it or prohibit its exercise. That pertains to the government of the public corporation. The fund itself arising from such licenses is for the private advantage and emolument of the town. The legislature cannot continue the franchise and permit its exercise and yet divert the advantage to be derived from it to another purpose than that pointed out by the charter, because that would be to invade the private interests of the corporation," etc.

It is true that in the subsequent case of the *State Board* v. *Aberdeen*, 56 Miss., 518, this adjudication is criticized, and this decision is condemned as error. Suppose it be granted that the criticism and condemnation are just, (although the case criticised is supported by respectable authority), yet, still, that criticism and condemnation are simply of the misapplication in the specific instance of the doctrine recognized in the original case; and it is that doctrine for which we contend; we care nothing about that particular application of it. The case in 56 Miss. does not reverse or overrule the original case in so far as that case recognizes the fact that there is and may be such a thing as a private right in a municipality distinct from its public rights and duties; or that there may be and is such a thing as private property of a municipality, as distinct from its public revenues. The error in the original case consisted simply in the classification made, and that is the only point on which the case in 56 Miss. overrules it. If, now, we pass away from our own adjudications on the subject to those of other states and the federal union we shall find numbers of them; and they are not ambiguous in their tone. *Crogan* v. *San Francisco*, 18 Cal., 590; *Ellerman* v. *McMains*, 30 La. Ann., 190; *Montpelier* v. *East Montpelier*, 29 Vt., 12; *Detroit* v. *Plank Road Co.*, 43 Mich., 140; *Richland County* v. *Lawrence County*, 12 Ill., 1; *Holliday* v. *Frisby*, 15 Cal., 630; *Merriweather* v. *Garrett*, 102 U. S., 472; *Williamson* v. *New Jersey*, 130 U. S., 189; *Hart* v. *New Orleans*, 12 Fed. Rept., 292; *The City* v. *Home Mutual Ins. Co.*, 32 La. Ann., 61; *Mayor of Birmingham* v. *Rumsey*, 63 Ala., 352; *Brown* v. *Gates*, 15 West Va., 131.

2. The so-called plenary power of the state over a municipality has its limitations. The principle is that what is called the plenary power of the legislature over a municipality, or a quasi municipality, is only such power when the legislature undertakes to exercise it in respect to those purposes which are public in their nature. Numerous cases are found in the books

in which a distinction is taken, asserted, and strongly insisted upon, between that sort of dictation by the legislature to a municipality on the one hand, and an attempt by the legislature to dictate in respect to matters which are not of public nature, on the other. Each of those cases necessarily involves a recognition or the fundamental principles for which we contend; that is to say, that not every, even business, relation into which a municipality may be permitted to enter, and may enter, pursuant to such permission, is to be taken and held as a public relation or business; and the attempt of the legislature in this case, if it made such an attempt (which we deny), to place this interest of the counties in charge of the state revenue agent, is abortive and nugatory for these reasons. *State* v. *Tappan*, 29 Wis., 664; *Hampshire* v. *Franklin*, 16 Mass, 75; *Holbrooke* v. *Milwaukee*, 13 Wis., 37; *Mills* v. *Charleston*, 29 Wis., 409; *People* v. *Detroit*, 28 Mich., 228.

3. Even where the state in a charter expressly reserves the right to repeal or amend, the power has its limitations. It is settled law that the charter of a business corporation is a contract guaranteed by the federal constitution ; also, that a state may reserve the right to alter or repeal. But even so, the reserved power can not be arbitrarily exercised. *People* v. *O'Brien*, 3 N. Y., 1; *Detroit* v. *Detroit Plank Road Co.*, 43 Mich., 140. By analogy the rule must be the same in respect to municipalities. Their charters are not contracts in the constitutional sense, it is true; but even so, they are in the same attitude of business corporations whose charters are amendable or repealable by the legislature. The same principles which forbid such interferences in the one case, under the power reserved, as would divest vested property rights, would also forbid it in the other.

4. The appointment of an agent is a property right; and an appointment made by legislative act would be an invasion of that right. The term "property" as it is employed in the law, and especially as employed in constitutional law,

imports more than the mere *res* which is the subject of owner-
ship.    It includes the abstract right by which that *res* is acquired,
owned, controlled and disposed of by its owner.    Whatever
invades that right is as much an invasion of "property" in
the *res* as would be the physical destruction of the *res* itself.
Am. and Eng. Encyclopedia of Law, title "Property," and
cases cited.

The right to appoint, direct, and dismiss an agent who shall
deal with and control private property, is a part of the right of
private property; and whenever the legislature invades that
right, it invades the right of private property.

Coming to the case in hand, we maintain : (1) that the state
officials, no matter how high their dignity, cannot, by virtue of
their office, and without express legislative authority, interfere
in any of the local affairs of a municipality—public or private;
and (2) that as to the local or private property matters of
municipalities, the legislature cannot authorize interference.
Authorities for first proposition: *People* v. *Booth*, 32 N. Y.,
397; *People* v. *Ingersoll*, 58 N. Y., 1; *People* v. *Fields*, 58 N.
Y., 491.    Authorities for second proposition: *Atkins* v. *Ran-
dolph*, 31 Vt., 226; *People* v. *Hurlburt*, 24 Mich., 44; *John-
son* v. *Hudson*, 96 Tenn., 630.

5. Railroad stocks held by a county are private property,
and free from any control of the state.    Mr. Cook, in his ex-
cellent work on "Stock and Stockholders," vol. 1, sec: 9,
says: "When a municipal corporation subscribes to the stock
of a railway company it becomes a stockholder in just the
same sense as any individual subscriber; is entitled to the
same rights, privileges, and emoluments; is subject to the same
burdens of duty and liability as other holders of stock.    This
doctrine is established as an unquestioned rule of law by
a long line of cases, both in the state and federal courts,
which involve the validity of bonds issued in aid of rail-
way or other corporations."    An examination of the authorities
cited by Mr. Cook to sustain this proposition demonstrates

that the author in the passage just quoted is not alluding so much to the formulation and announcement of a line of decisions expressly made directly upon the point (for but few of the cases do expressly formulate and announce the rule so advanced by him), but the learned author is announcing a principle which is to be deduced from the cases cited by way of generalizing ratiocination. What he means to affirm, it becomes apparent, is this: That an examination of these cases will show that, from various points of view, and in numerous discussions of complicated and important questions, the courts have generally proceeded upon the recognition of a fact, which fact is, as he states, that when a county or town is authorized to subscribe to railroad stock it assumes by its subscription the precise attitude, both in respect to privileges and in respect to liability, of any other stockholder. It seems to be a postulate on which and from which all the cases proceed, even where the judges in rendering their decisions do not expressly announce it, but assume it as a mere matter of course. This is the author's idea, and we submit that an examination of the authorities shows that his idea is correct. *Shipley* v. *Terre Haute*, 74 Ind., 297; *Morgan County* v. *Thomas*, 76 Ill., 120; *Marshall* v. *Railroad Co.*, 92 N. C., 322; *Bank of United States* v. *Planters' Bank*, 9 Wheat., 904; *Bank* v. *Wister*, 2 Pet., 318; *Briser* v. *Bank*, 2 Pet., 257; *Curran* v. *Arkansas*, 15 Howard (U. S.), 304; *Barring* v. *Dabney*, 19 Wal., 1; *Murray* v. *Charleston*, 96 U. S., 432; *Western Society* v. *Philadelphia*, 31 Pa., 175.

Argued orally by *Marcellus Green*, for appellant, and by *Edward Mayes*, for appellees.

Terral, J., delivered the opinion of the court.

Wirt Adams, state revenue agent, filed this bill in his own name, as revenue agent, alleging that Hinds, Adams and Jefferson counties, under authority conferred upon them for that

purpose by an act of the legislature of the State of Mississippi, subscribed and paid for shares of stock in the Natchez, Jackson & Columbus Railroad Company, which was duly issued to them; that Hinds county acquired stock in said company in the sum of $200,000; that Adams county acquired stock in said company in the sum of $300,000, and that Jefferson county acquired stock in said company in the sum of $100,000; that, after the construction and equipment of said railroad, and while the said counties were· stockholders therein, the property of said Natchez, Jackson & Columbus Railroad Company, of every sort and kind whatever, was acquired by the Yazoo & Mississippi Valley Railroad Company, through the Louisville, New Orleans & Texas Railway Company, by such fraudulent methods (set out in the bill) as gave said counties a right of action, for which this suit is brought. The Yazoo & Mississippi Valley Railroad Company demurred to the bill, the chancery court sustained the demurrer and the revenue agent appeals. By agreement of the parties, the only question decided by the chancery court, or discussed here, is whether the state revenue agent may maintain this suit in his own name.

The act of the legislature under which this suit is brought, so far as it relates to his power so to do, is as follows: "He (state revenue agent) shall have power, and it shall be his duty, to proceed, by suit in the proper court, against all officers, county contractors, persons, corporations, companies and associations of persons for all past due and unpaid taxes of any kind whatsoever, for all penalties or forfeitures, for all past due obligations and indebtedness of any character whatever owing to the state or any county, municipality or levee board, and for damages growing out of the violation of any contract with the state or any county, municipality or levee board. He shall have a right of action and may sue at law or in equity in all cases where the state or any county, municipality or levee board has the right of action or may sue."

If the counties whose rights are involved in this suit hold

such rights in a public capacity, or if such rights are affected with a public governmental trust, the legislature may well appoint the agency for the control of such rights and interests (2 Kent, sec. 305); but, if the rights and estates of these several counties in the shares of stock of the railroad company, acquired by direct legislative authority, are interests of a private character, the legislature may not interfere with their management.

Unquestionably a county ordinarily holds its property in trust for the public composing the county; its courthouse, jail and other buildings, as well as all other property held by it under the constitution and general laws on the subject, are held by it charged with a trust to apply these properties to the public use. They could not, perhaps, be diverted from such use, nor can we suppose that the legislature would desire to do so, but undoubtedly the legislature might name the officers who shall have charge of such property, and change them at its pleasure. But it is not difficult to perceive that a county might own and hold the legal title to the property or rights in action not affected with any such public trust as attaches to the property above specified. The shares of stock of a railroad company held by a county are certainly not held for any governmental purpose, and it would seem that a county holding such rights would own and hold them in the same way and character as an ordinary corporation or other person might hold them. The benefits to be derived from the holding of shares of stock of a railroad company are the same when held by a county as when held by an individual, or by an ordinary trading corporation, to wit—their money value. The building of the railroad would afford facilities for general commerce and intercourse, and to that extent and in a limited sense the railroad would be for public use, but that incident would not make the shares of the capital stock in the railroad company of the nature of public property. If the legislature had, in the act authorizing the counties to subscribe to the capital stock of the proposed rail-

road company, indicated that the shares of stock taken by the counties should be held for public governmental purposes, that would have ended the matter; but there is nothing in the act restricting the nature of the holding of such shares by the counties. We are inclined to think it was the legislative intent that the counties might acquire and hold the shares of stock in said company as a private corporation in that respect. The authorities on the subject are conflicting; we follow those approved by Judge Cooley in his work on Const. Lim., section * 235, et seq.

If the estates here involved are not affected with a public governmental trust, the legislature can neither dispose of such estates nor appoint an agent for their management; for to appoint an agent to manage or sue for property pertains alone to the owner thereof. Story on Agency, sec. 2. Certainly whatever rights the counties may have against the defendant railroad company may be asserted by suit, but the suit should be brought in the names of the several counties.

*Affirmed.*