HANCOCK COUNTY *v.* SHAW.

[81 South. 647, In Banc, No. 20633.]

1. CONSTITUTIONAL LAW. *Restrospective law. Imposing liability on* Laws Ex. Sess. 1917, chapter 38, section 1, approved October 12, 1917, requiring counties to pay owners of cattle killed or injured since March 1, 1916, in dipping under the supervision of county *county.*

agents, is not invalid, as being retrospective and as impairing vested rights of individuals or private corporations in violation of Constitution 1890, section 16, prohibiting *ex post facto* laws, the legislature having the right to compel a state subdivision to discharge an obligation considered a just claim against the public.

2. *Same.*

This statute is not violative of section 14 of the Constitution of 1890, as denying due process of law, nor of any other constitutional provision, state or federal. The statute creates no right of action against an individual or private corporation. It simply gives a right of action against the county whose agent destroys or permanently injuries private property.

APPEAL from the circuit court of Hancock county.

Suit by Francis Shaw against Hancock County. From a judgment for plaintiff the county appeals.

The facts are fully stated in the opinion of the court.

*E. J. Gex, for* appellant.

This case is based solely on the question of whether the county can be made to pay for any stock that was killed prior to the passage of the act giving a cause of action. Suit in this case was of course filed under and by virtue of chapter 38 of the Laws of the Special Session of 1917. The agreement provides that the cow was killed prior to the passing of this act. The question now for this court to decide whether or not the legislature could provide that a county had to pay for all cattle killed prior to the passage of the law.

There is practically nothing at issue in this case as far as money value is concerned, but the decision of this court on this question will mean the settling of vital questions to every county in the state where dipping was done.

This court in the case of *George County* v. *Bufkin,* 78 So. 781, refused to pass on this question, and decided that case on some other subject. In the case

at bar I am frank to say that this is the only point at issue.    Our constitution does not prohibit the passing of retroactive measures, providing that they do not conflict with vested rights.    We have looked up the authorities to find some decision that touched this proposition and have been unable to find decision *pro* or *con.*    We have found decisions holding that the legislature had no right. to make individuals or railroads pay for something,. the doing of which, was not prohibited when done.    We are not citing these decisions as we realize that there might be a difference between an individual and a county.    The county being a sub-division of the state there might be some difference in the holding of the courts, and as to. why there should, we cannot tell.

*Mize & Mize,* for appellees.

The court gave judgment for the appellee, and, as said by counsel for appellant in his brief, the only question is whether or not the law compelling the county to pay for cattle killed in dipping prior to the passage of the law authorizing suit for same, violates the constitution.    As stated by appellant, the only question is whether or not the law is constitutional.

The only sections of the Constitution that we can conceive of this law violating, would be either section 14 or section 16.    Section 14 provides that no person shall. be deprived of life, liberty or property, except by due process of law.    Section 16 provides that no *ex post facto* law or law impairing obligation of contract shall be passed.    We do not see how the act under which this suit was brought could violate section 16 of the Constitution, as all authorities agree that *ex post facto* laws refer only to criminal law and there is no question of impairment of contract herein.    So the only section that could be violated would be section 14,

in that it would interfere with vested rights and therefore deprive tax payers of their property without due process of law.

This has been settled, however, against the contention of appellant. The case of *Cullman County* v. *Blount County, Supreme Court of Alabama,* 160 Ala. 319, & 18 Eng. Ann. Cas., p. 322, holds that the constitutional provision against retroactive legislation which would affect vested rights is intended for the protection of individuals and does not apply to legislation recognizing and affirming the moral obligation of a subordinate branch of a state (as a county) with respect to a past transaction. In that case, there is a note setting out the great weight of authority as in favor of appellee, and the minority rule is constituted by a few New England cases of early date. But the question has been settled by the supreme court of the United States in the case of *New Orleans* v. *Clark,* 95 U. S. 644, 24 Law Ed. 521, which was a case that went up from Louisiana. The Louisiana constitution had a provision that no retroactive law should be passed. The supreme court of the United States, in considering that provision, said at the conclusion of the opinion:

"The constitutional inhibition does not apply to legislation recognizing or affirming the binding obligation of the state, or of any of its subordinate agencies, with respect to past transactions. It is designed to prevent retrospective legislation injuriously affecting individuals, and thus, protect vested rights from invasion."

While the facts of that case are somewhat different from the facts of the instant case, whether or not a retroactive law fixing liability on a state or subdivision of a state is void, and that question was squarely before the supreme court of the United States in the *New Orleans* v. *Clark, Case, supra;* and in Rose's notes, p. 316, as shown in the volume of Law Edition, *supra,* this case is cited with approval by a number of cases

under this particular head. The cases cited in the opinion in the *Cullman County case, supra,* from Alabama inferentially hold the same thing, some of which are from the supreme court of the United States, but the case of *New Oorleans* v. *Clark, supra,* is the most applicable of the cases we have been able to examine; and we have been unable to find any authority holding that this provision of the Constitution deprives a state of the right of passing a law that would compel the state or a subdivision thereof to pay a moral or equitable claim.

As said in the case of *Williams* v. *Eggleston,* 42 Law Ed. 1047, this is on the theory that the legislature has control and authority over the affairs of the government unless clearly prohibited by a provision of the Constitution of the United States or of a state.

All of the work of cattle dipping is done for the benefit of the public at large, the tax payers, the only ones who could complain, and since they are benefitted generally by it, then, when one of them suffers damage through the negligence of an officer of the government, who is nothing more than an agent of the tax payers themselves in supervising the dipping of cattle, it is morally and equitably right and just that the owner should be compensated for the damage he has suffered, and this is what the law under which this suit was brought contemplates.

It is not so very different from the act of the legislature permitting boards of supervisors in their discretion to make payment for claims of cattle falling through bridges, etc. Under such act, it is left discretionary with the board of supervisors whether or not they should pay if they pay, then nobody can be heard to complain, and there is no authority holding that this violates the "due process of law" clause of the constitution. The act under which this suit was brought simply compels the county to pay where there was negligence on the part of the dipping supervisors resulting in loss to the cattle owner, and when the

legislature passed this act it was simply consent on the part of the state that the state or subdivision thereof might be sued.

Counsel for appellant not having cited the section of the Constitution he claims this act violates, of course we have to assume that the only sections that it could violate are those hereinbefore referred to.

STEVENS, J., delivered the opinion of the court.

The county in this case appeals from the judgment of the circuit court of Hancock county awarding appellee the value of a cow killed through the negligence of the county's agent in dipping the cow under the provisions of the statute regulating the dipping of cattle for the eradication of the cattle tick. Chapter 38 of the Laws of Mississippi, as passed at the extraordinary session of the legislature in 1917, requires the several counties of this state to pay a reasonable compensation for live stock that may have been killed or permanently injured since March 1, 1916, or that might be killed or permanently injured in the process of dipping after the passage of such law. The statute was approved October 12, 1917. Section 1 provides:

"Be it enacted by the legislature of the state of Mississippi, that any person in any county in this state shall be entitled to recover from such county reasonable compensation for any live stock owned by such person that may have been killed or permanently injured since March 1, 1916, or that may hereafter be killed or permanently injured in the process of dipping or as a result of such dipping for the eradication of the cattle tick, where such dipping was done under the supervision of the board of supervisors or the live stock sanitary board."

The record in this case shows that the cow the value of which is sued for was killed prior to the pas-

sage of the statute. As stated by counsel for appellant:

"There is no dispute as to the facts in this case. * * * There is but one thing that we care to call the attention of this court to, and that is that the cow sued for in this case was killed, if killed at all, by the agents of the county prior to the passing of the law under which suit was filed. * * * The question now for. this court to decide is whether or not the legislature could provide that a county had to pay for all cattle killed prior to the passage of the law. * * * This is the only point at issue."

And in the brief of counsel for appellee it is said: "As stated by appellant, the only question is whether or not the law is constitutional."

We proceed, therefore, to a discussion of this, the only point raised by the present appeal.

Counsel for appellant observes:

"We have found decisions holding that the legislature had no right to make individuals or railroads pay for something the doing of which was not prohibited when done."

But counsel frankly admits he is "unable to find any authorities that * * * would support our contention, or that would disprove our contention" so far as the constitutionality of the present statute is concerned.

Any decision as to the power of the legislature to pass the statute under review was expressly pretermitted in *George County* v. *Bufkin*. 117 Miss. 844, 78 So. 781.

The statute is retroactive to the extent that it gives a right of action to the owners of live stock killed or permanently injured in the process of or as a result of the passage and approval of the law October 12, 1917. But the statute expressly provides that the live stock the value of which is sued for must be killed or permanently injured as a result of dipping "done under the

supervision of the board of supervisors or the live stock sanitary board;'' and the burden is upon the owner to show that there is no contributory negligence on his part, and to ''first make proof of the amount of his loss or damage to the board of supervisors.'' This legislation is not retrospective in the sense that it injuriously affects or disturbs vested rights of individuals or private corporations. The legislature was evidently mindful of the fact that owners of live stock have no option when it comes to dipping their cattle. It is a violation of the law for them to refuse to dip. The chancery court has jurisdiction to enforce the provisions of the dipping law and by its mandatory process to compel obedience on the part of the owner. If, then, the property of the owner is destroyed or permanently injured in the process of or as a result of dipping, it is fair to say that the owner whose property is thus destroyed has an equitable claim against the public. His property has been taken for the public good. As said in *Cullman County* v. *Blount County,* 160 Ala. 319, 49 So. 315, 18 Ann. Cas. 322:

''The constitutional inhibition against retroactive laws does not apply to legislation recognizing and affirming such obligation of a subordinate branch of the state with respect to past transactions. It is designated and intended to prevent retrospective legislation injuriously affecting individuals, and thus protect vested rights from invasions.''

The statute creates no right of action against an individual or private corporation. It simply gives a right of action against the county whose agent destroys or permanently injures private property. The sovereign state is dealing with one of its political subdivisions. No vested rights are affected or disturbed. The constitutional point under consideration was expressly decided in *New Orleans* v. *Clark,* 95 U. S. 644, 24 L. Ed. 521. The Supreme Court of the United States,

by Mr. Justice FIELD, made the following pertinent observation:

"A law requiring a municipal corporation to pay a demand which is without obligation, but which is equitable and just in itself, being founded upon a valuable consideration received by the corporation, is not a retroactive law—no more so than an appropriation act providing for the payment of a pre-existing claim. The constitutional inhibition does not apply to legislation recognizing or affirming the binding obligation of the state, or of any of its subordinate agencies, with respect to past transactions. It is designed to prevent retrospective legislation injuriously affecting individuals, and thus protect vested rights from invasion."

The statute under consideration does not, in our judgment, violate either section 14 or section 16 of our state Constitution, or any other constitutional provision, either state or federal. Many retroactive statutes have been passed apportioning an existing liability between counties, or requiring counties or municipal corporations to pay claims which are morally binding, but which cannot be legally enforced without a special act of the legislature.

JUDGE STORY, in *Society for the Propogation of the Gospel* v. *Wheeler,* 2 Gall. 105, 22 Fed. Cas. 756, No. 13, 156, defined retroactive legislation, stating:

"Upon principle every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions or considerations already passed, must be deemed retrospective."

This definition of Mr. Justice STORY was quoted with apparent approval by the Supreme Court of the United States in *Sturgess* v. *Carter,* 114 U. S. 511, 5 Sup. Ct. 1014, 29 L. Ed. 241.

Without attempting to test the constitutionality of our statute in the light of, or with reference to, this

definition, we have no hesitancy in saying that the main question is that of the right of the legislature to compel a subdivision of the state to discharge an obligation which is considered to be a just claim against the public.  This general question will be found discussed to some extent in the note to *State ex rel. Bulkeley et al.* v. *Williams,* 68 Conn. 131, 35 Atl. 24, 421, 48 L. R. A. 465.

*Affirmed.*

ETHRIDGE, J. (dissenting).

. I dissent from the conclusion of the majority that the judgment should be affirmed.  I concur in the majority opinion that the statute involved is constitutional, but I think upon this record there was a failure to show liability against the county under the statute.  The declaration before the justice of the peace and in the circuit court reads as follows:

"Plaintiff, Francis Shaw, by attorneys, shows to the court, that on the ——— day of October, 1917, he had a cow belonging to him killed in beat 3, said Hancock county, Miss., because of being dipped under the dipping law under the supervision of an employee of said county, said employee having dipped said cow according to law, and, while being so dipped, said cow was killed; that he filed his claim with the board of supervisors of said county for the death of said cow, which claim said board of supervisors turned down and declined to pay; that said cow at the time it was killed as aforesaid was of the value of sixty-five dollars. Wherefore plaintiff sues and demands judgment against said county in said sum of sixty-five dollars.

There is an agreed statement of facts in the record as follows:

"It is agreed that Francis Shaw was the owner of one cow which was very near bringing a calf, dipped on the 1st of October, 1917; at the time said cow was

dipped it was in good condition, and lived four days
after dipping; that at the time she was dipped the
man who was in charge of the dipping, in adding to the
solution of the vat, poured the concoction on the cow's
nose; that thereafter the cow became sick, and lived for
four days, then died; that the inspector, while the cow
was in this sick condition, observed her and observed
some scratches on her while lying down, but. does not
know how or why she received such scratches; that
the value of the cow was sixty-five dollars; and it is
further agreed that if the solution had been properly
prepared the cow would not have been injured.''

It will be noted from the above declaration that
nothing was said of presenting the evidence to the
board of supervisors nor what evidence was presented,
if any. It fails to shows that plaintiff conclusively
proved his case before the board of supervisors, and
failed to show that there was any proof that there was
no contributory negligence on the part of the plaintiff.
Of course, the declaration stood denied, and the only
evidence in the record, or that was produced on trial, is
in the above-recited agreement. This agreement must
be taken to be the whole facts bearing on the con-
troversy. It was intended as such, and is so treated
in the briefs by, both sides.

If I understand the position of my Brethren, they do
not treat this statement as a full statement of all the
facts, but presume that there was other evidence before
the court below which would sustain the judgment.
If I understand their position, it is necessary for the
plaintiff to go before the board and make proof in ac-
cordance with section 2 of chapter 38, Laws of 1917.
This section reads as follows:

''That any owner of live stock making claim for
damage for the death or injury of such live stock, shall
first make proof of the amount of his loss or damage
to the board of supervisors, and when conclusive proof
has been made or submitted to the board and there

being no evidence of contributory negligence on the part of the owner, and the board is satisfied that the said owner has suffered such loss, then the board of supervisors shall pay to such owner out of the general county funds, such amount as will compensate him for his loss or damage, but if the board of supervisors shall refuse to pay such claims or any part of them, the owner shall have the right of action against the county where such damage occurred.''

Section 1 of the act has been quoted in the majority opinion. Under this section 2, as well as under the general statutes on the subject, the presentation of the claim to the board of supervisors for allowance is a condition precedent to relief, and in this statute the proof must be made before the board so as to show conclusively that the injury resulted from the negligence of the county and its agents, and also that there was no contributory negligence. The statute does not contemplate agreement as to facts, and neither the board nor any of its agents or attorneys are authorized to waive the conclusive proof, which means proof beyond reasonable doubt, which plaintiff must make before the allowance can be made. The act imposed a liability not theretofore recognized under the law, and the provision of section 2 is a condition jurisdictional in its nature, and no liability can be imposed until the party "shall first make proof of the amount of his loss or damage to the board of supervisors, and when conclusive proof has been made, or submitted to the board and there being no evidence of contributory negligence on the part of the owner,'' before suit is instituted; and if the appeal is not from the board of supervisors to the circuit court, the declaration and proof in the justice or circuit court having original jurisdiction must show not only that the claim was presented to the board, but must show that statutory showing was made to the board. It is not made in this record, and the certificate of the clerk recites:

"I do hereby certify that the foregoing nine pages is a true and correct copy of all the records and evidence upon the trial of the case at the September term of the circuit court of said county and state."