# Gully, State Tax Collector, *v.* Williams Bros., Inc. *et al.*

(Division B.   April 18, 1938.)

[180 So. 400.   No. 33113.]

J. W. Backstrom, of Leakesville, for appellant.

124

· **Eaton & Eaton**, of Gulfport, for appellees, Williams Bros., Inc., and Mississippi-Gulfport Compress & Warehouses, Inc.

126

Mize, Thompson & Mize, of Gulfport, for appellees, Granville Mellen, Fred S. Hewes, Jr., and J. W. Grimes, Individual Port Commissioners, and Fidelity & Deposit Company of Maryland, surety on the respective bonds of Granville Mellen, Fred S. Hewes, Jr., J. W. Grimes, J. R. Dent and C. A. Simpson, Port Commissioners.

**Ethridge, P. J.,** delivered the opinion of the court.

J. B. Gully, state tax collector, filed a bill in the chancery court of Harrison county against Williams Brothers, Inc., a nonresident corporation; the Mississippi-Gulfport Compress & Warehouses, Inc., a nonresident corporation; Granville Mellon, Chas. A. Simpson, Fred S. Hewes, Jr., J. R. Dent, and J. W. Grimes, all resident citizens and port commissioners of the city of Gulfport; J. W. Milner, resident citizen and mayor of the city of Gulfport; Geo. W. Odom and Ivan Ballenger, residents of the city of Gulfport, and commissioners thereof; and the several sureties on the official bonds on the mayor and commissioners of the city, and of the port commissioners. In this bill it is alleged that the city of Gulfport entered into an arrangement for the construction of a compress and warehouses in the city of Gulfport, issuing bonds of the city for that purpose, which bonds were sold, and under an arrangement with Williams Brothers, Inc., eight cotton warehouses were constructed for the storage of cotton in bales, and for the compressing of said cotton, under which arrangement the city was to build warehouses Nos. 6, 7, and 8, and Williams

Brothers, Inc., were to build Nos. 1 to 5, both inclusive. The city expended $80,000 in the building of the warehouses assigned to it, acting under chapter 269, Laws of 1932, from a bond issue of $150,000; under an agreement with Williams Brothers, Inc., and the Mississippi-Gulfport Compress & Warehouses, Inc., the city conveyed to the latter a lot described in the bill by the tax collector; and upon the land so described Williams Brothers, Inc., and the Mississippi-Gulfport Compress & Warehouses, Inc., constructed five warehouses, numbered 1, 2, 3, 4, and 5, with sample rooms, office, water tower, etc., which the Mississippi-Gulfport Compress & Warehouses, Inc., used and operated, and still is, for warehouse purposes, and the purposes for which the properties were constructed.

The bill avers that the city acquired a lot, described in the bill, upon which were constructed units 6, 7, and 8 of the project, together with the high density cotton compress; that on or about the 7th day of December, 1932, the said Williams Brothers, Inc., and the city of Gulfport, acting through the mayor of the city, and the city clerk, Cassibry, and J. R. Dent, president of the port commission, and P. W. Kennedy, secretary thereof, entered into an agreement or contract whereby the city of Gulfport and the port commission of the city of Gulfport leased to Williams Brothers, Inc., for a period of ten years from February 1, 1933, the three buildings or units numbered 6, 7, and 8, for an annual rental of $12,800, the rent to be paid in equal semiannual installments, commencing on the first day that Williams Brothers, Inc., was placed in possession of said building, and subsequent payments to be made on the first day of each six-month period thereafter; that the contract was submitted to, and considered by, the mayor and commissioners of the city at a meeting held on the 7th day of December, 1932, and was duly approved, as shown by a resolution on the minute book, copy of which was made

an exhibit to the bill. In accordance with the contract the buildings numbered 6, 7, and 8 were completed, accepted by the mayor and commissioners of the city, and also by the port commissioners of Gulfport; and the said Williams Brothers, Inc., took possession of the buildings on or before the 1st day of February, 1933; and under the terms and conditions of the said lease Williams Brothers, Inc., and the Mississippi-Gulfport Compress & Warehouses, Inc., were obligated to pay the city of Gulfport and the port commissioners of Gulfport an annual rental of $12,800, the sum of $6,400 payable on the 1st day of February, 1933, and a like amount on the first day of each six-month period thereafter. It is alleged that there was due the city of Gulfport and the port commissioners of Gulfport on February 1st, 1937, a balance of rental payments amounting to $13,200; that the payments were not made at the time they became due under the terms and conditions of the contract, for which reason Williams Brothers, Inc., and the Mississippi-Gulfport Compress & Warehouses, Inc., are liable to the complainants for interest at the rate of 6 per cent. per annum from the due date of said payments until made, which interest calculated at the rate of 6 per cent. per annum to the 1st day of February, 1937, after allowing interest credits on all payments when made, amounts to a balance of $1,926, making a total due under the contract of $15,126 as of that date; that complainant is entitled to recover interest on the balance of the principal payments from and after the 1st of February, 1937, at the rate of 6 per cent. per annum until paid; and in addition thereto 20 per cent. of the principal and interest as commission to the complainant for services as state tax collector, as provided by law.

It is further averred that the indebtedness and liability of the defendants herein, and each of them, appeared by open account on the books, minutes, and records of the mayor and board of commissioners of the city of

Gulfport, and from the records of the port commission of the city, which indebtedness the complainant discovered by investigation, and of which he has given notice as required by law; it is averred that the notice was given to defendants thirty days prior to the filing of this suit, a copy being attached to the bill as an exhibit.

The bill avers that the lease or rental contract herein was made between the city of Gulfport and the port commission of Gulfport as one party, and Williams Brothers, Inc., as the other party; but the Mississippi-Gulfport Compress & Warehouses, Inc., owns units 1 to 5, both inclusive, together with other property which is a part of the contemplated warehouse project, and these units, together with units 6, 7, and 8, owned by the city of Gulfport, constitute, in truth, one project of a system of warehouses, and it is not practicable to operate units 6, 7, and 8 without units 1 to 5 inclusive; that immediately upon completion of units 6, 7, and 8, together with the compress, these properties were turned over to the Mississippi-Gulfport Compress & Warehouses, Inc., which has operated and controlled these units, in conjunction with its adjoining properties, received the income and revenues therefrom, and is liable for the annual rental, as provided in the contract, by virtue of which it acquired possession of the property, and under the provisions of which it has operated it.

It is averred in the bill that the Mississippi-Gulfport Compress & Warehouses, Inc., is owned by, or is a subsidiary of, Williams Brothers, Inc.; and, if not, the two corporations are connected under a working agreement, and are controlled by the same officers, or practically the same, and that under such contract with Williams Brothers, Inc., the Mississippi-Gulfport Compress & Warehouses, Inc., operates the properties of the city of Gulfport herein described, and is liable to the city of Gulfport and to the port commissioners of Gulfport for

rental, as provided in the contract herein. It states that the contract between Williams Brothers, Inc., and the Mississippi-Gulfport Compress & Warehouses, Inc., is material to the issues in this cause, and that on March 25, 1937, the complainant made demand upon the latter company to produce it, but they have failed to comply with the demand of complainant. The complainant states that he cannot describe the contract in question; but that it would substantially aid in fixing liability in the present cause, and is material to the issues herein; and asks that Williams Brothers, Inc., and the Mississippi-Gulfport Compress & Warehouses, Inc., be required to produce it.

Complainant prays for a writ of attachment and garnishment against the nonresident corporations, and that defendants be required to make answer hereto, as required by law, answer on oath being waived; and further prays that Williams Brothers, Inc., and the Mississippi-Gulfport Compress & Warehouses, Inc., be required to furnish copy of the agreement or contract between the two companies in regard to the use of units 6, 7, and 8 of the property, and, upon final failure to comply, that decree be entered in favor of the complainant for the use of the city of Gulfport and the port commissioners of Gulfport, and against the defendants and each of them, for the sum of $15,126, with 6 per cent. interest thereon per annum until paid; and for a 20 per cent. commission on both principal and accrued interest for the complainant; also, that judgment be rendered against the defendants' sureties to the extent and in the amounts determined by the court upon final hearing, in the proportion of their several bonds to the entire indebtedness, or in such amount as the court may deem to be mete and proper.

The official bonds of the various officers named were made exhibits to the bill, and all of the defendants filed demurrers thereto, except that two of the port commis-

sioners, J. R. Dent and C. A. Simpson, filed an answer admitting the allegations of the bill, but averring that they were not responsible, because they constituted a minority of the commission, and used their best endeavors to have the moneys sued for collected by the port commission, of which they were members.

The demurrer of Williams Brothers, Inc., claimed that the state tax collector was without legal authority to institute and prosecute the suit, for the reason that the matters out of which the cause of action arose relate to the proprietary functions of the city of Gulfport rather than to its governmental functions.

The Mississippi-Gulfport Compress & Warehouses, Inc., demurred to the bill on the ground, first, that the bill of complaint stated no cause of action against the defendant; second, that the state tax collector is without legal authority to institute and prosecute this suit for the reason that the matters out of which the alleged cause of action arose relates to the proprietary functions of the city rather than from its governmental functions; and, third, that the exhibit attached to the bill of complaint shows that the defendant has assumed no obligation to pay the sum demanded, but that the obligation has been assumed by Williams Brothers, Inc.

The surety companies on the respective bonds' each filed a more elaborate demurrer, among other things claiming that the bill did not show that the city or the port commissioners suffered any loss; did not aver that the debtors of the city or of the port commissioners are insolvent, or that the full amount of the indebtedness cannot be collected from them; and shows that the alleged neglect, if there was neglect, was in the official capacity, and not the neglect of the person individually. It is claimed that this suit arises from the alleged nonaction of the mayor and commissioners of the city, and of the port commissioners thereof, involving judicial discretion; and that neither the mayor and commissioners

of the city nor the port commissioners in their official capacity, or as individuals, are liable for mistakes of judgment or of law involving judicial discretion. It is averred that the indebtedness in question grows out of the private business venture by the city, as a private corporation, not in its public or governmental capacity; and that the suretyship of the defendant does not extend to the acts of the principal in its private business enterprises; that the state tax collector is without authority to sue for past-due obligations and indebtedness due the city arising out of private business enterprises; that the bill does not allege fraud or bad faith on the part of the principal, or any of the other members of the board of mayor and commissioners or of the port commissioners; that the duty of collecting the indebtedness here sued on devolves, under the law, on the port commissioners, and not upon the board of mayor and commissioners of the city, nor upon any individual commissioner of the city; and that the bill states no cause of action against the defendants.

The mayor and commissioners of the city filed demurrers of substantially the same import.

The port commissioners, Hewes, Grimes, and Mellon, filed a demurrer in which they alleged that the bill showed that the duty of collecting the rental, under the contract set out therein, devolved entirely upon the mayor and commissioners of the city of Gulfport in one paragraph, and in the next paragraph it was averred that it devolved upon the port commissioners, the two paragraphs being contradictory and irreconcilable.

The chancellor took the demurrers under consideration, to be submitted on briefs, fixing the date for the filing of briefs and their consideration; and it was ordered and adjudged that the demurrer against the Mississippi-Gulfport Compress & Warehouses, Inc., be sustained; and, complainant declining to plead further, the bill was dismissed as to it. The demurrers of the mayor

and commissioners of the city, and of the port commissioners thereof, were likewise sustained, and the bill dismissed. In other words, all the demurrers were sustained, and, the complainant refusing to plead further, the bill was dismissed.

It seems to have been the theory of the chancellor below, who did not render a written opinion, that the suit could not be maintained by the state tax collector because the subject matter of the suit was owned by the city, and operated in its proprietary, and not in its governmental, capacity, and that the power of the state tax collector did not extend to suits for debts due the municipality in its proprietary capacity.

Two cases are relied on by the appellee to sustain the chancellor's finding or judgment. First is the case of Trustees of Aberdeen Female Academy v. Mayor and Board of Aldermen of Aberdeen, 13 Smedes & M. 645; and, second, Adams, S. R. A., v. Natchez, J. & C. R. Co. et al., 76 Miss. 714, 25 So. 667. Neither of these cases, in our view, are in point. The action in the case of Trustees of Aberdeen Female Academy v. Aberdeen, supra, involved the right of the Legislature in 1850 to divert liquor license funds from the municipality to which it had been granted by the charter of the city of Aberdeen in 1837; which funds the Legislature in 1848 undertook to divert from the city to the academy. There was no question involved as to the right to bring suit; the question was whether the city had such a vested interest in the funds, after they were collected, that the Legislature could not divert or control them. The court held that the city of Aberdeen had such a vested right as could not be taken from it by legislative enactment. This decision, announcing this principle, was overturned, although not expressly overruled, in the case of State Board of Education v. Aberdeen, 56 Miss. 518, where it was held: ''A municipal charter is not a contract, within the sense of the Federal Constitution, between the

municipality and the State; nor has the municipality such proprietary interest in money raised by liquor-licenses taxed under its charter, as prevents subsequent legislation from giving another direction to such money. But, under authority conferred by the charter, the municipality may come under such engagements with third persons as to create a contract, respecting which subsequent legislation will be so far restrained that it cannot impair perfected rights.'' In the course of the opinion Simrall, C. J., speaking for the court, said: ''The charter does not create a contract between the municipality and the State, and it has not such a proprietary interest in money authorized to be raised by its charter as would prevent a subsequent Legislature from giving another direction to such money [citing authorities]. The rule is subject to the limitation that, under authority conferred by the charter, the municipality may come under such duty or engagements with third persons as to create the sanctity of contract, so that a subsequent Legislature will be restrained in its power so far as that it cannot impair rights which have become perfected. The language of the Constitution is imperative, that there shall be established a common-school fund, to consist, in part, of all moneys derived from licenses to retail liquors. The Legislature has devised general laws under which these licenses shall be granted. No other authority shall or can issue them except those of a city or town, or county, and the money so derived shall be paid into the State treasury for the school-fund.''

Further on in the opinion the court said: ''The charter of 1854 did not, as did that of 1837, give the license-money to the city, as ordinary corporate funds. It is fair to assume that such provision had been omitted from the charter in view of the decisions of Corporation of Aberdeen v. Saunderson, 8 Smedes & M. 663, and Trustees of Aberdeen Female Academy v. Aberdeen, 13 Smedes & M. 645, which seemed to have held the doc-

trine that, so long as the town had a gift, by charter, of the money, the Legislature could not direct any other use of it, unless it repealed the franchise to grant the license. Counsel do not pretend that these decisions rest upon any solid reason, but press them upon us as authority, on the rule of stare decisis. If we were compelled to perpetuate the error which they contain, it would be with the utmost reluctance. But they have no application to moneys derived from licenses under the charter of 1854, because that charter does not give the money to the city.''

The case of Adams, S. R. A., v. Natchez, J. & C. R. Co., supra, was a suit undertaken by the state revenue agent to upset or rescind a sale of the N., J. & C. Railroad to the Y. & M. V. R. Co., the counties of Adams, Hinds, and Jefferson each having subscribed for stock in the N., J. & C. Railroad under legislative authority. The state revenue agent contended that the contract between the N., J. & C. R. Co. and the Y. & M. V. R. Co., with its subsidiary, the L. N. O. & T. R. Co., presented such fraud as to authorize the counties to sue, in order to protect their interests in such sale. It was not a question of recovering a contractual debt or tax obligation, and the decision must be interpreted and understood in the light of the litigation then before the court. The language of the statute relied on by the revenue agent in that case was as follows: ''He [State Revenue Agent] shall have power, and it shall be his duty, to proceed by suit in the proper court against all officers, county contractors, persons, corporations, companies and associations of persons for all past due and unpaid taxes of any kind whatsoever, for all penalties or forfeitures for all past due obligations and indebtedness of any character whatever owing to the State or any county, municipality or levee board, and for damages growing out of the violation of any contract with the State or any county, municipality or levee board. He shall have a right of ac-

tion and may sue at law or in equity in all cases where the State or any county, municipality or levee board has the right of action or may sue.'' Laws 1894, p. 29.

Apparently, although the decision is not clear, the revenue agent was proceeding to recover damages for the violation of the contract rights in the stock subscribed for by the counties, through merger or sale of the corporation to another corporation. This does not seem to be authorized by the language above quoted. It was not contemplated that vested or contractual rights acquired by corporations having the power to sell its property and franchises constitute any right in its stockholders to intervene and control it through the courts. It is true, the court commented on the fact that the property was held in the proprietary capacity of the counties, and not in their governmental capacity; and seemed to draw a distinction between the power of the revenue agent to represent the counties in the one case and the other. However, if the decision is understood to mean that the revenue agent or state tax collector, when authorized by law to sue on behalf of a county or municipality or state, that language conferring such power would be beyond the power of the Legislature, then such decision was overruled in the case of Adams, S. R. A., v. Kuykendall, 83 Miss. 571, 35 So. 830, where a similar contention was presented to the court, which held that the Legislature had complete control of municipalities, under the Constitution of 1890, and that it was within the power of the Legislature even to deprive a municipality of local self-government, and to appoint their local officers or agents.

At page 589 of 83 Miss., at page 833 of 35 So., the court said in this case: ''And it is urged further that if chapter 34, p. 29, Acts 1894, was so intended, it is null and void, as being an invasion of the right of local self-government which is vested in municipal corporations under the Constitution of 1890; and, again, it is urged that if the act of 1894 was designed to operate as an amend-

ment to the charters of municipalities which, like the city of Vicksburg, are governed under special charters, and not the Code chapter on 'Municipalities,' in that view of the act it is violative of section 88 of the Constitution of 1890, because under that section the Legislature is deprived of the power to amend charters of existing municipalities; and the case of Yazoo City v. Lightcap, 82 Miss. 148, 33 So. 949, is cited as authority. The contention that the Constitution of 1890 in any manner abridged or limited the power of the Legislature in reference to municipal corporations is based upon a total misconception of the real meaning and design of that instrument. Municipal corporations are now, as they have always been in this state, purely creatures of legislative will; governed, and the extent of their powers limited, by express grants; invested, for purposes of public convenience, with certain expressed delegations of governmental power; their granted powers subject at all times to be enlarged or diminished; having no vested rights in their charters, which are subject at all times to amendment, modification, or repeal; their powers, their rights, their corporate existence, dependent entirely upon legislative discretion, acting as it may deem best for the public good. This conclusion has been so repeatedly announced by our own courts, and has been so uniformly approved by text-writers, and decided by courts of last resort in other states, that it has become crystallized into settled law, and now receives recognition as a universally accepted rule of constitutional construction. Unless expressly limited by constitutional provision, the legislative department has absolute power over municipalities.''

Again, 83 Miss. 571, on page 592, 35 So. 830, 834, in the same case, the court, in its opinion, said: ''''The unwritten theory of local self-government cannot be read into a constitution to vary the ordinary and usual meaning of the terms employed, when otherwise the construc-

tion of the instrument is free from doubt. Certainly the theory can have no application where, as in this case, the power is reserved to recall even the right to elect their own local officers. And it is an invariable rule, supported by a wealth of authority, that it is never a violation of the doctrine of local self-government for the state to appoint its own fiscal agent to supervise the action of county or municipal taxing officers. And, indeed, it has been held in many well-reasoned cases that citizens of a municipality are not guaranteed the right of local self-government, and that their right to participate in the choice of officers who are to administer the affairs of the local government is a matter exclusively within the judgment and discretion of the legislative department of the state government. [Citing authorities.] How absolutely barren of merit is the claim of municipalities in this state to the right of local self-government in regard to the matter now being considered, will be made apparent, and settled beyond cavil or doubt, when section 139 of the Constitution is recalled, whereby the Legislature is expressly empowered to withdraw from the citizens of all municipalities even the power of choosing their own local officers. We adhere to the timehonored and firmly established doctrine that all municipalities are within legislative control, and that section 88 placed no limitation on that power. We further hold that as the sovereign taxing power is vested solely in the state, and its relinquishment never to be inferred, the Legislature acted within the scope of its unquestioned powers when it created the office of revenue agent, and had the right to clothe him with absolute power and control over the fiscal affairs of the state, so long as in so doing no provision of the Constitution was violated.''

In Gillis v. Indian Creek Drainage Dist., 155 Miss. 160, 124 So. 262, fourth syllabus, it is held: ''Property within a municipality lying in a drainage district is subject

to assessment for benefits accruing to such property by the improvement brought about by the drainage district. The Legislature has full control over municipal corporations, their powers and functions."

In State ex rel. Knox, Atty. Gen., v. Grenada County, 141 Miss. 701, 105 So. 541, it was held that, "Since the county is a subdivision of the state, created for administrative and other public purposes, and owes its creation to the state, it is subject at all times to legislative control, except where specific provisions of the Constitution govern." In that case 15 C. J. 420, section 53, is quoted, as follows: "As counties are but subdivisions of the state, created by the Legislature for political and civil purposes as agencies of the state government, they are entirely subject to legislative control, except so far as restricted by the Constitution of the state. The Legislature need not submit an act relating to county affairs to the voters of the county for approval, unless required by constitutional provision; but, where it is optional with a county to be bound or not by a legislative act, it cannot assume to be bound by a part of the act, without at once being liable to the remaining provisions."

We also quote from Jackson County v. Neville, 131 Miss. 599, 95 So. 626, 629, as follows: "The revenues of a county are not the property of the county in the sense in which the revenue of a private person or corporation is regarded. The revenues of a county are subject to the control of the Legislature, and when the Legislature directs their application to a particular purpose or to the payment of the claims of particular parties, the obligation to so pay is thereby imposed on the county." A number of authorities are cited in this case. See, also, Mississippi Digest, under title, Counties, Key Nos. 24 and 64. See, also, Hancock County v. Shaw, 120 Miss. 48, 81 So. 647; Yazoo County v. Humphreys County, 120 Miss. 861, 83 So. 275. These authorities are cited to show that the cities and counties are subject to legislative control,

and have no actual powers which forbid legislative control of their affairs in all respects. There is no provision of the Constitution of 1890 which prevents the Legislature from selecting an officer to bring suit in behalf of such municipality or counties, in all cases whatsoever. A municipality is an intangible, impalpable, and incorporeal entity, which must act through agents. If the municipality has a right of action, either in its governmental capacity or in its proprietary capacity, to make it effective some person must represent it in a suit; and the Legislature has the power to select such agent to act for the municipality or the county, as the case may be.

In this cause the state tax collector is not seeking to take from the city a property held in its proprietary capacity, or in any other, but is seeking to have paid to the proper authorities or custodian funds due the municipality. And we think the language of section 6986 confers power on the state tax collector to maintain the suit here involved. The language is broad and comprehensive. It says: ''The state tax collector may appoint a sufficient number of deputies, but not to exceed ten at any one time. He shall have power and it shall be his duty to proceed by suit in the proper court against all persons, corporations, companies and associations of persons for all past due and unpaid taxes of any kind whatever, whether of the state, county, municipality, drainage, levee or other taxing district, or any subdivision thereof, and for all past due obligations and indebtedness of any character due and owing to them or any of them, except penalties for the violation of the antitrust laws and except income and inheritance taxes,'' etc.

The complainant's bill in this cause states the cause of action against Williams Brothers, Inc., and the Mississippi-Gulfport Compress & Warehouses, Inc., and it is one which the state tax collector is authorized to bring. It is argued that the language of the section must be ap-

plied to the collection of taxes and of such obligations as are statutory, and not extended to suits for contractual obligations due the municipalities in their private or proprietary capacity; and that the rule of ejusdem generis shall be applicable here; and that applying it would restrain the actions, or suits, by the state tax collector to collection of revenues or statutory obligations. In Gully, S. T. C., v. Stewart, 178 Miss. 758, 174 So. 559, and other cases referred to therein, the appellees argue that it operates to restrain the language used to the purposes contended for by the defendants. It will be noted that in the first part of this section, conferring the power to sue, it is his duty to proceed in the collection "against all persons, corporations, companies and associations of persons for all past due and unpaid taxes of any kind whatever, . . . and for all past due obligations and indebtedness of any character due and owing to them or any of them, except penalties for the violation of the anti-trust laws and except income and inheritance taxes." It will be noted that in each clause the words, "of any kind whatever" are used. Therefore any taxes of any kind whatever, omitting those excepted, may be sued for by the state tax collector; and the other clause, "for all past due obligations and indebtedness of any character due and owing to them or any of them," omitting the matters excepted, embraces every kind of contractual obligation for which suit may be brought. The state tax collector, as to this character of claims, has full and complete power. All that was held in Gully v. Stewart, supra, was that the state tax collector did not have a right, under the language used in this statute, to sue for a tortuous removal of sand and gravel from a pit in a navigable body of water; that the section does not embrace actions in tort. That decision does not apply to the suit here, which is an action for a debt.

The present litigation cannot be said to belong to the

municipality in its proprietary capacity, nor can it be said that the warehouses owned by it were held in a purely proprietary capacity. The law has created the port commission with wide powers of control in such matters, by chapter 120, section 4849 et seq., Code of 1930, and by chapter 269, Laws of 1932, and chapter 209, Laws of 1934. The port commissioners were to be appointed, one by the Governor, one by the board of supervisors of the county in which the port was located, and one by the municipal authorities of the city where such port is located. The powers and duties of the port commissioners are defined, and their power to deal with matters are set forth in the statute, and need not be incorporated in this opinion, unduly prolonging it.

Certain revenues are provided for projects to be carried on; among others, the tax collector of the county is to pay over to authorities a portion of all county ad valorem taxes collected, for the use of the harbor or port provided for in the chapter. In chapter 209 it is expressly made the duty of the port commissioners to collect rents, among other things, and to pay such rents over to the proper custodian. City authorities have like duties. Especially was this the case prior to the enactment of chapter 209, Laws of 1934.

These provisions show that the port commissioners, and the scheme for raising revenue and expending it for the encouragement of custom through the port, mentioned in the law, are designed for the benefit of the public, as distinguished from a private purpose. It is true that there is a private interest mingled with the public interest, and private ownership of some of the property. The principle that taxes can be levied only for public uses is well established, and of universal application; but what constitutes a private or a public purpose has, in legal opinion, changed considerably with the growth and development of commerce, industry, and various other activities of the people. In Black on Con-

stitutional Law (4 Ed.), 441, it is said: "One invariable limitation upon the power of taxation is that it must always be exercised for the benefit of the public, never for the advantage of individuals. Whether or not a particular purpose of taxation is a 'public' purpose, is a question which must be determined, in the first instance, by the legislature. But its determination is not conclusive. And if the courts can see that the purpose of the tax is plainly and indubitably a private purpose, they will not allow its collection." There is a full discussion of the principle on pages 441 to 445, with citation of many authorities.

A very late discussion of the question of public and private purposes of legislative enactment, and one that cites a vast array of authorities, and is the last case upon the subject in this state, is to be found in the case of Albritton v. City of Winona, Miss., 178 So. 799.

It is clear from a consideration of these authorities that the scheme involved in this litigation, under which the city erected warehouses and leased them to Williams Brothers, Inc., who, in turn, appears to have leased them to the Mississippi-Gulfport Compress & Warehouses, Inc., was carried out with the intention of conducting their use for a public purpose, in promoting the general welfare, not only for the inhabitants of the city, but of the cotton growers and others throughout the state of Mississippi, who might be benefited and interested in the successful establishment of a port with appropriate facilities, to invite and stimulate commerce through such port.

For the reasons indicated, we think the chancellor was in error, and the judgment will be reversed, the demurrers overruled as to Williams Brothers, Inc., and the Mississippi-Gulfport Compress & Warehouses, Inc. The state tax collector confessed the demurrers of the other defendants. The cause is remanded for further proceedings.

Reversed and remanded.